1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The Honorable Marsha J. Pechman

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

BARBARA KNAPKE, individually and on behalf of all other similarly situated,

Plaintiff,

v.

PEOPLECONNECT, INC., a Delaware Corporation,

Defendant.

Case No. 2:21-cv-00262-MJP

DEFENDANT'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12 AND MEMORANDUM IN SUPPORT

NOTE ON MOTION CALENDAR: MAY 28, 2021

ORAL ARGUMENT REQUESTED

DEFENDANT'S MOTION TO DISMISS
2:21-CV-00262-MJP

JENNER & BLOCK LLP
633 WEST 5TH STREET
LOS ANGELES, CA 90071
TELEPHONE: 213 239-5100

1

## **TABLE OF CONTENTS**

2  TABLE OF AUTHORITIES ............................................................................... iii

3  INTRODUCTION .............................................................................................1

4  BACKGROUND ..............................................................................................1

5  ARGUMENT ...................................................................................................2

6  I.  Plaintiff Agreed To Arbitrate Her Claims. .............................................2

7      A.  Plaintiff Is Bound By PeopleConnect's Terms Of Service.....................2

8          1.  Plaintiff's Counsel Bound His Client To The Terms Of Service. ..............3

9      B.  The Arbitrator Must Decide If This Dispute Is Subject To Arbitration. .................5

10 II.  Plaintiff's Claim Is Barred By Federal Law. ...........................................5

11     A.  The Communications Decency Act Bars Plaintiff's Claim. ...................6

12     B.  The Copyright Act Preempts Plaintiff's Claim...................................8

13 III.  Plaintiff Has Failed To State A Claim Under ORPS. ......................................10

14     A.  Plaintiff Fails To Plead Conduct Within The Territorial Scope Of ORPS. ...........10

15     B.  Plaintiff Fails To Plead A *Prima Facie* ORPS Claim. ........................................10

16         1.  Plaintiff Fails To Plead "Use" Of Her Persona...........................................10

17         2.  Plaintiff Does Not Allege Her Persona Has Commercial Value. ..............11

18     C.  Plaintiff Has Not Pleaded Unlawful Advertising Or Solicitation..........................12

19         1.  PeopleConnect's Yearbook Previews Have An Informational Purpose....12

20         2.  Referencing A "Monthly Subscription Service" Does Not Plead A Commercial Purpose. .......................................................................14

21

22     D.  Plaintiff's Claim Falls Within ORPS's Exemptions.............................................15

23         1.  The "Literary Work" Exemption Bars Plaintiff's Claim. ..........................15

24         2.  The "Newsworthy Value," "Public Affairs," And "General Public Interest" Exemptions Bar Plaintiff's Claim. ...............................................16

25         3.  The First Amendment Exemption Bars Plaintiff's Claim............................17

26 IV.  Plaintiff's Claim Is Barred By The United States Constitution..........................18

27     A.  The Conduct Alleged Is Core First Amendment Speech.......................................18

28

DEFENDANT'S MOTION TO DISMISS – i
2:21-CV-00262-MJP

JENNER & BLOCK LLP
633 WEST 5TH STREET
LOS ANGELES, CA 90071
TELEPHONE: 213 239-5100

1.    Plaintiff's Proposed Restriction On Speech Triggers Strict Scrutiny.........20

2.    Plaintiff's Claim Is Barred Even If The Speech Was Commercial. ..........21

B.    Applying ORPS To Yearbook Excerpts Violates The Dormant Commerce Clause.................................................................................................22

CONCLUSION.....................................................................................................24

JENNER & BLOCK LLP
633 WEST 5TH STREET
LOS ANGELES, CA 90071
TELEPHONE: 213 239-5100

1

# **TABLE OF AUTHORITIES**

2

**Page(s)**

3

**Cases**

4

*ACLU v. Johnson,*
    194 F.3d 1149 (10th Cir. 1999) ..................................................................................23

5

6

*Almeida v. Amazon.com, Inc.,*
    456 F.3d 1316 (11th Cir. 2006) ................................................................................15

7

8

*Am. Beverage Ass'n v. Snyder,*
    735 F.3d 362 (6th Cir. 2013) ...............................................................................22, 23

9

*Am. Booksellers Found. v. Dean,*
    342 F.3d 96 (2d Cir. 2003) .........................................................................................23

10

11

*Am. Libraries Ass'n v. Pataki,*
    969 F. Supp. 160 (S.D.N.Y. 1997) ............................................................................23

12

13

*Aronson v. Dog Eat Dog Films, Inc.,*
    738 F. Supp. 2d 1104 (W.D. Wash. 2010).................................................................17

14

*Ballen v. City of Redmond,*
    466 F.3d 736 (9th Cir. 2006) .....................................................................................22

15

16

*Balsley v. LFP, Inc.,*
    No. 08 CV 491, 2010 WL 11561844 (N.D. Ohio Jan. 26, 2010) ...............13, 16, 17

17

18

*Baugh v. CBS, Inc.,*
    828 F. Supp. 745 (N.D. Cal. 1993) ............................................................................17

19

*Bd. of Trs. Of State Univ. of N.Y. v. Fox*
    492 U.S. 469 (1998).....................................................................................................22

20

21

*Ben Ezra, Weinstein, & Co. v. Am. Online Inc.,*
    206 F.3d 980 (10th Cir. 2000) .....................................................................................8

22

23

*Best v. Berard,*
    776 F. Supp. 2d 752 (N.D. Ill. 2011) .........................................................................17

24

*Bolger v. Youngs Drug Prods. Corp.,*
    463 U.S. 60 (1983).................................................................................................19, 21

25

26

*Brennan v. Opus Bank,*
    796 F.3d 1125 (9th Cir. 2015) .....................................................................................5

27

28

*Callahan v. Ancestry.com,*
    No. 20-cv-08437, 2021 WL 783524 (N.D. Cal. Mar. 1, 2021) ....................5, 6, 7, 8

DEFENDANT'S MOTION TO DISMISS – iii
2:21-CV-00262-MJP

JENNER & BLOCK LLP
633 WEST 5TH STREET
LOS ANGELES, CA 90071
TELEPHONE: 213 239-5100

*Carafano v. Metrosplash.com, Inc.*,
    339 F.3d 1119 (9th Cir. 2003) .................................................................................8

*Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*,
    447 U.S. 557 (1980).............................................................................19, 21, 22

*Cher v. Forum Int'l, Ltd.*,
    692 F.2d 634 (9th Cir. 1982) ..........................................................................19, 21

*Clark v. Andover Sec.*,
    44 F. App'x 228 (9th Cir. 2002) ......................................................................3

*Comer v. Micor, Inc.*,
    436 F.3d 1098 (9th Cir. 2006) .........................................................................3

*Cox Broad. Corp. v. Cohn*,
    420 U.S. 469 (1975)........................................................................................19

*Dean Witter Reynolds, Inc. v. Byrd*,
    470 U.S. 213 (1985)..........................................................................................2

*Debesay v. Sec. Indus. Specialists, Inc.*,
    No. 20-cv-00927, 2021 WL 962549 (W.D. Wash. Mar. 15, 2021)..................2

*Dex Media W., Inc. v. City of Seattle*,
    696 F.3d 952 (9th Cir. 2012) ..................................................................18, 19, 20

*Dobrowolski v. Intelius, Inc.*,
    No. 17 CV 1406, 2018 WL 11185289 (N.D. Ill. May, 21 2018)...................14, 15

*Esch v. Universal Pictures Co.*,
    No. 09-cv-02258, 2010 WL 5600989 (N.D. Ala. Nov. 2, 2010)....................20

*ETW Corp. v. Jireh Publ'g, Inc.*,
    332 F.3d 915 (6th Cir. 2003) .......................................................13, 18, 22, 23

*Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*,
    521 F.3d 1157 (9th Cir. 2008) ........................................................................6

*Feldman v. Google, Inc.*,
    513 F. Supp. 2d 229 (E.D. Pa. 2007) ...............................................................4

*Firoozye v. Earthlink Network*,
    153 F. Supp. 2d 1115 (N.D. Cal. 2001) ...........................................................8

*Force v. Facebook, Inc.*,
    934 F.3d 53 (2d Cir. 2019)...............................................................................6

*Fox v. Nationwide Mut. Ins. Co.*,
    117 N.E.3d 121 (Ohio Ct. App. 2018)............................................................11

*Gionfriddo v. Major League Baseball*,
    94 Cal. App. 4th 400 (Cal. Ct. App. 2001) ........................................................14, 15

*Groden v. Random House, Inc.*,
    61 F.3d 1045 (2d Cir. 1995)...................................................................................20

*Harbers v. Eddie Bauer, LLC*,
    No. C19-1012, 2019 WL 6130822 (W.D. Wash. Nov. 19, 2019) ........................2, 3

*Harvey v. Sys. Effect, LLC*,
    154 N.E.3d 293 (Ohio Ct. App. 2020) ......................................................... *passim*

*Hesse v. Sprint Spectrum, L.P.*,
    No. C06-0592, 2012 WL 37399 (W.D. Wash. Jan. 9, 2012)..................................5

*Hoglund v. Meeks*,
    170 P.3d 37 (Wash. Ct. App. 2007) .......................................................................4

*IMDb.com Inc. v. Becerra*,
    962 F.3d 1111 (9th Cir. 2020) ..............................................................................20

*Independent Living Resource Center San Francisco v. Uber Technologies, Inc.*,
    No. 18-cv-06503, 2019 WL 3430656 (N.D. Cal. July 30, 2019) ........................4, 5

*Italian Colors Rest. v. Becerra*,
    878 F.3d 1165 (9th Cir. 2018) ..............................................................................21

*Jackson v. Playboy Enters., Inc.*,
    574 F. Supp. 10 (S.D. Ohio 1983) ........................................................................11

*Javitch v. Prudential Sec., Inc.*,
    No. 02 CV 7072, 2011 WL 251099 (N.D. Ohio Jan. 25, 2011) ............................2

*Jones v. Dirty World Ent. Recordings LLC*,
    755 F.3d 398 (6th Cir. 2014) ..................................................................................6

*Jules Jordan Video, Inc. v. 144942 Canada Inc.*,
    617 F.3d 1146 55 (9th Cir. 2010) ........................................................................8, 9

*Kimzey v. Yelp Inc.*,
    21 F. Supp. 3d 1120 (W.D. Wash. 2014).............................................................6, 7

*Kincaid v. Gibson*,
    236 F.3d 342 (6th Cir. 2001) ............................................................................18, 20

*Landham v. Lewis Galoob Toys, Inc.*,
    227 F.3d 619 (6th Cir. 2000) ................................................................................12

*Larson v. Bear*,
    230 P.2d 610 (Wash. 1951)....................................................................................4

JENNER & BLOCK LLP
633 WEST 5TH STREET
LOS ANGELES, CA 90071
TELEPHONE: 213 239-5100

*Laws v. Sony Music Ent., Inc.*,
    448 F.3d 1134 (9th Cir. 2006) ..............................................................................9

*Letizia v. Prudential Bache Sec., Inc.*,
    802 F.2d 1185 (9th Cir. 1986) ..............................................................................3

*Levin v. Caviar, Inc.*,
    146 F. Supp. 3d 1146 (N.D. Cal. 2015) .................................................................2

*Liberi v. Taitz*,
    No. 11-0485, 2011 WL 13315691 (C.D. Cal. Oct. 17, 2011)...........................7, 8

*Maloney v. T3Media, Inc.*,
    853 F.3d 1004 (9th Cir. 2017) ...........................................................................8, 9

*Maloney v. T3Media, Inc.*,
    94 F. Supp. 3d 1128 (C.D. Cal. 2015) ................................................................8, 9

*Marshall's Locksmith Serv. Inc. v. Google, LLC*,
    925 F.3d 1263 (D.C. Cir. 2019) ............................................................................7

*Milo & Gabby, LLC v. Amazon.com, Inc.*,
    12 F. Supp. 3d 1341 (W.D. Wash. 2014)........................................................6, 8, 9

*Mitchell v. Abercrombie & Fitch*,
    No. C2-04-306, 2005 WL 1159412 (S.D. Ohio May 17, 2005) ..........................10

*Montana v. San Jose Mercury News, Inc.*,
    34 Cal. App. 4th 790 (Cal. Ct. App. 1995) .........................................................21

*Murphy v. Schneider Nat'l, Inc.*,
    362 F.3d 1133 (9th Cir. 2004) ..............................................................................3

*New Kids on the Block v. News Am. Publ'g, Inc.*,
    745 F. Supp. 1540 (C.D. Cal. 1990) ...................................................................18

*Nieman v. Versuslaw, Inc.*,
    No. 12-3104, 2012 WL 3201931 (C.D. Ill. Aug. 3, 2012) .............................14, 17

*Obado v. Magedson*,
    No. 13-2382, 2014 WL 3778261, 7 (D.N.J. July 31, 2014) ...........................8, 14

*Ostergren v. Cuccinelli*,
    615 F.3d 263 (4th Cir. 2010) ..............................................................................19

*Page v. Something Weird Video*,
    960 F. Supp. 1438 (C.D. Cal. 1996) ..............................................................19, 21

*Pike v. Bruce Church, Inc.*,
    397 U.S. 137 (1970)............................................................................................22

DEFENDANT'S MOTION TO DISMISS – vi
2:21-CV-00262-MJP

JENNER & BLOCK LLP
633 WEST 5TH STREET
LOS ANGELES, CA 90071
TELEPHONE: 213 239-5100

*Polydoros v. Twentieth Century Fox Film Corp.*,
   67 Cal. App. 4th 318 (Cal. Ct. App. 1997) ...................................................21

*PSINet, Inc. v. Chapman*,
   362 F.3d 227 (4th Cir. 2004) ........................................................................23

*Ranazzi v. Amazon.com, Inc.*,
   46 N.E.3d 213 (Ohio Ct. App. 2015) ...............................................................2

*Reed v. Town of Gilbert*,
   576 U.S. 155 (2015) .....................................................................................20

*Rent-A-Ctr., W., Inc. v. Jackson*,
   561 U.S. 63 (2010) .........................................................................................5

*Roe v. Amazon.com*,
   714 F. App'x 565 (6th Cir. 2017) ......................................................11, 12, 13

*Romney v. Franciscan Med. Grp.*,
   349 P.3d 32 (Wash. Ct. App. 2015) .................................................................3

*Sarver v. Chartier*,
   813 F.3d 891 (9th Cir. 2016) .........................................................................20

*Shanghai Com. Bank Ltd. v. Kung Da Chang*,
   404 P.3d 62 (Wash. 2017) ...............................................................................2

*Sorrell v. IMS Health Inc.*,
   564 U.S. 552 (2011) ................................................................................18, 20

*Thompson v. Getty Images (US), Inc.*,
   No. 13 C 1063, 2013 WL 3321612 (N.D. Ill. July 1, 2013) .....................14, 15

*Tompkins v. 23andMe, Inc.*,
   13-CV-05682, 2014 WL 2903752 (N.D. Cal. June 25, 2014) ..........................4

*Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*,
   425 U.S. 748 (1976) ........................................................................20, 21, 22

*Vinci v. Am. Can Co.*,
   591 N.E.2d 793 (Ohio Ct. App. 1990) ...........................................................13

*Vrdolyak v. Avvo, Inc.*,
   206 F. Supp. 3d 1384 (N.D. Ill. 2016) ......................................................18, 19

*Willan v. Columbia Cnty.*,
   280 F.3d 1160 (7th Cir. 2002) .......................................................................19

*William O'Neil & Co. v. Validea.com Inc.*,
   202 F. Supp. 2d 1113 (C.D. Cal. 2002) .....................................................19, 21

JENNER & BLOCK LLP
633 WEST 5TH STREET
LOS ANGELES, CA 90071
TELEPHONE: 213 239-5100

*In re Wyze Data Incident Litig.*,
    No. C20-0282, 2020 WL 6202724 (W.D. Wash. Oct. 22, 2020) .............................................2

*Zacchini v. Scripps-Howard Broad. Co.*,
    351 N.E.2d 454 (Ohio 1976).................................................................................................13

**Statutes and Rules**

17 U.S.C. § 101 ...........................................................................................................................9, 16

17 U.S.C. § 102 .............................................................................................................................8, 9

17 U.S.C. § 103 .............................................................................................................................8, 9

17 U.S.C. § 106 ................................................................................................................................8

17 U.S.C. § 301 .......................................................................................................................5, 6, 8

47 U.S.C. § 230 ................................................................................................................................5, 6

Ohio Rev. Code § 2741.01......................................................................................................10, 11, 12

Ohio Rev. Code § 2741.02............................................................................................................ *passim*

Ohio Rev. Code § 2741.09.....................................................................................................15, 16, 17, 18

Fed. R. Civ. Proc. 12..................................................................................................................2, 3, 6

**Other Authorities**

*Shellville High School, The Blade*, TX0001451935, Public Catalog, U.S.
    Copyright Office (Oct. 30, 1984), https://bit.ly/2NE5Aui........................................................9

DEFENDANT'S MOTION TO DISMISS – viii
2:21-CV-00262-MJP

JENNER & BLOCK LLP
633 WEST 5TH STREET
LOS ANGELES, CA 90071
TELEPHONE: 213 239-5100

1

**INTRODUCTION**

2   Yearbooks are American institutions. They are the primary medium through which school

3   communities memorialize the events, stories, and images of the prior year. Local libraries as well

4   as national archives maintain yearbooks as valued artifacts, which both inform and entertain their

5   readers for generations. PeopleConnect, Inc. ("PeopleConnect") operates one of the most

6   comprehensive online libraries of yearbooks in the nation. Much of that material is available to

7   any website user for free. Some of it is available to subscribing members. But all of it comes from

8   that most ubiquitous of keepsakes—yearbooks.

9   Plaintiff submits in this case that PeopleConnect violates Ohio law by displaying excerpts

10  from yearbooks on the internet. Plaintiff seeks to pursue a sweeping class action under the Ohio

11  Right of Publicity Statute ("ORPS"). Initially, Plaintiff's claim goes nowhere in this Court as she

12  agreed to resolve any disputes with PeopleConnect in arbitration. But, more fundamentally, given

13  that Plaintiff seeks to remove from the internet documents that are already available to all at public

14  libraries, it is no surprise that a host of legal doctrines bar Plaintiff's efforts. Federal law—

15  specifically, Section 230 of the Communications Decency Act and Section 301 of the Copyright

16  Act—prevents Plaintiff from pursuing her claim; Plaintiff cannot plead all the elements she must;

17  and the claim violates the United States Constitution. The Court therefore should dismiss

18  Plaintiff's Complaint.

19

**BACKGROUND**

20  PeopleConnect owns and operates Classmates.com, which includes an online library of

21  over 450,000 school yearbooks that can be viewed by its 70 million members. Plaintiff alleges that

22  when users access Classmates.com, a user can "enter the information of a particular school," and

23  the website then provides the user with a "listing of search results," each of which "corresponds to

24  a school of which [PeopleConnect] sells [its] yearbook service." Complaint ("Compl."), Dkt. 1, ¶¶

25  4–5. Plaintiff alleges that these search results, which display excerpts from the relevant yearbook,

26  "provide a limited, free preview of Defendant's service" that "include[] Plaintiff's name and

27  photo." *Id.* ¶ 6. Plaintiff thus claims that PeopleConnect uses her identity to "market …

28  [PeopleConnect's] subscription services." *Id.* ¶¶ 9–10. And, while Plaintiff concedes that

DEFENDANT'S MOTION TO DISMISS – 1
2:21-CV-00262-MJP

PeopleConnect could "sell Plaintiff's information on an individual basis[,]" she argues that it cannot "us[e] her identity to advertise its subscription service." *Id.* ¶ 14. Plaintiff asserts a single claim under ORPS. *Id.* ¶¶ 33–41.

## ARGUMENT

## I.   Plaintiff Agreed To Arbitrate Her Claims.

To start, Plaintiff is in the wrong forum. The Federal Arbitration Act ("FAA") "mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 213 (1985). And, where an arbitration agreement delegates questions of arbitrability to the arbitrator, the court's role is limited to determining if a valid agreement exists. *Debesay v. Sec. Indus. Specialists, Inc.,* No. 20-cv-00927, 2021 WL 962549, at *1 (W.D. Wash. Mar. 15, 2021). Here, Plaintiff's counsel assented to PeopleConnect's Terms of Service ("TOS") while acting as Plaintiff's agent, binding Plaintiff to the arbitration provision therein. The Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(3).

### A.   Plaintiff Is Bound By PeopleConnect's Terms Of Service.

Numerous courts have held that clickwrap agreements—like the one here—which require a website user to electronically assent to a website's terms of service—constitute valid and enforceable contracts.[1] *See, e.g.*, *In re Wyze Data Incident Litig.,* No. C20-0282, 2020 WL 6202724, at *2 (W.D. Wash. Oct. 22, 2020); *Levin v. Caviar, Inc.,* 146 F. Supp. 3d 1146, 1157 (N.D. Cal. 2015). The terms need not be displayed on the same page as the button to give the user sufficient notice of those terms. *See Harbers v. Eddie Bauer, LLC,* No. C19-1012, 2019 WL 6130822, at *6 (W.D. Wash. Nov. 19, 2019). In *Harbers,* before the plaintiff could place her order, she was taken to a screen that stated, just above a "Submit Order" button: "By ordering you agree to eddiebauer.com's Privacy Policy and Terms of Use." *Id.* The phrase "Terms of Use" was

---

[1] Washington law applies here because Defendant is located in Seattle, Washington. Compl. ¶ 16; *see Shanghai Com. Bank Ltd. v. Kung Da Chang,* 404 P.3d 62, 66–67 (Wash. 2017) (applying the Restatement (Second) Conflict of Laws). Further, there is no conflict between Washington and Ohio law on these issues. *See Ranazzi v. Amazon.com, Inc.,* 46 N.E.3d 213, 217–18 (Ohio Ct. App. 2015) (explaining that clickwrap agreements are valid and binding); *Javitch v. Prudential Sec., Inc.,* No. 02 CV 7072, 2011 WL 251099, at *8 (N.D. Ohio Jan. 25, 2011) (agents can consent to an arbitration provision on principal's behalf).

DEFENDANT'S MOTION TO DISMISS – 2
2:21-CV-00262-MJP

hyperlinked to the full terms. *Id.* The court found that the plaintiff had sufficient notice of the terms of use and granted the defendant's motion to compel arbitration. *Id.* at *6, *9.

The same is true here. Before accessing the results of a search on the Classmates website or registering for a free or paid account, the user is prompted with the following message: "You may not use our site or the information we provide unless you agree to our Terms of Service." Declaration of Tara McGuane ("McGuane Decl.") ¶ 6.[2] The TOS are hyperlinked directly from that message, and the user must affirmatively select "I AGREE" to perform a search or finish registering for an account. *Id*. The TOS contains the following arbitration provision in bolded text:

> **YOU AND THE PEOPLECONNECT ENTITIES EACH AGREE THAT ANY AND ALL DISPUTES THAT HAVE ARISEN OR MAY ARISE BETWEEN YOU AND THE PEOPLECONNECT ENTITIES SHALL BE RESOLVED EXCLUSIVELY THROUGH FINAL AND BINDING ARBITRATION, RATHER THAN IN COURT[.]**

McGuane Decl. ¶ 8. Under controlling law, as set forth in *Harbers* and the other cases cited above, that is sufficient to create a valid and enforceable contract to arbitrate.

### 1.    Plaintiff's Counsel Bound His Client To The Terms Of Service.

Plaintiff's counsel, Christopher Reilly of Bursor & Fischer, P.A., bound Plaintiff to the TOS and the arbitration provision when he assented to PeopleConnect's TOS on her behalf. A lawyer is his client's agent. *Clark v. Andover Sec.*, 44 F. App'x 228, 231 (9th Cir. 2002). Under Washington law, "[a]rbitration agreements may encompass nonsignatories under contract and agency principles." *Romney v. Franciscan Med. Grp.*, 349 P.3d 32, 42 (Wash. Ct. App. 2015) (*citing Comer v. Micor, Inc.,* 436 F.3d 1098, 1101 (9th Cir. 2006)); *see Powell v. Sphere Drake Ins., P.L.C.,* 988 P.2d 12, 14–15 (Wash. Ct. App. 1999)); *Letizia v. Prudential Bache Sec., Inc*., 802 F.2d 1185, 1187 (9th Cir. 1986) (arbitration agreement enforceable under "ordinary . . . agency principles"). And an agent's authority to "perform certain services on a principal's behalf results

---

[2] Because a motion to compel arbitration is brought pursuant to Rule 12(b)(3), the Court need not accept the pleadings as true and "may consider facts outside the pleadings." *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1137 (9th Cir. 2004).

DEFENDANT'S MOTION TO DISMISS – 3
2:21-CV-00262-MJP

JENNER & BLOCK LLP
633 WEST 5TH STREET
LOS ANGELES, CA 90071
TELEPHONE: 213 239-5100

1    in implied authority to perform the usual and necessary acts associated with the authorized

2    services." *Hoglund v. Meeks*, 170 P.3d 37, 44 (Wash. Ct. App. 2007) (citing *Larson v. Bear*, 230

3    P.2d 610, 613 (Wash. 1951)).

4         On January 7, 2021, Reilly registered for a free Classmates.com account, which he then

5    upgraded to a paid subscription. McGuane Decl. ¶ 12. Reilly could not have created this account

6    or upgraded to a paid subscription without first accepting the TOS. *Id.* ¶ 13. Further, the Complaint

7    includes screenshots accessible to a user only after accepting the TOS. Compl. ¶ 6, 8, images 1,

8    3–5; McGuane Decl. ¶ 13. *See Tompkins v. 23andMe, Inc.*, 13-CV-05682, 2014 WL 2903752, at

9    *7 (N.D. Cal. June 25, 2014), *aff'd*, 840 F.3d 1016 (9th Cir. 2016) (plaintiff's access to portions

10   of website requiring assent to terms of use constitutes sufficient evidence that plaintiff assented);

11   *Feldman v. Google, Inc.*, 513 F. Supp. 2d 229, 237 (E.D. Pa. 2007) (same). Reilly's creation of an

12   account and the screenshots in the Complaint confirm that Plaintiff's counsel, who was

13   "authorized" to draft and file the Complaint, took the "usual and necessary acts" to do so and

14   thereby bound Plaintiff to the TOS and the arbitration provision therein. *Hoglund*, 170 P.3d at 44.

15        *Independent Living Resource Center San Francisco v. Uber Technologies, Inc.*, No. 18-

16   cv-06503, 2019 WL 3430656 (N.D. Cal. July 30, 2019), is instructive. There, Uber moved to

17   compel arbitration on the grounds that the plaintiffs' agent—a paralegal at the law office

18   representing the plaintiffs—agreed to Uber's terms of service. *Id.* at *3–4. The *Independent Living*

19   court held that, because the plaintiffs had "dispatched their agents to affirmatively test the Uber

20   application in order to bolster their claim of discrimination," the plaintiffs were "bound by the

21   arbitration agreement to the same extent as their agent." *Id*. at *4. This case is no different. Instead

22   of accessing Classmates.com herself, Plaintiff "dispatched" Reilly to "affirmatively test the

23   [Classmates.com website] in order to bolster [her] claim." *Id*. So it was through her agent Reilly

24   that Plaintiff gained access to portions of Classmates.com she would not have been able to view

25   without assenting to the TOS. Plaintiff cannot avoid the arbitration agreement by having her

26

27

28

JENNER & BLOCK LLP
633 WEST 5TH STREET
LOS ANGELES, CA 90071
TELEPHONE: 213 239-5100

1  attorney do what she otherwise would have had to do herself. Rather, as in *Uber*, Plaintiff is "bound

2  to the arbitration agreement [in the TOS] to the same extent as [her] agent." *Id*. at *4[3]

### B.   The Arbitrator Must Decide If This Dispute Is Subject To Arbitration.

4  When an arbitration agreement "clearly and unmistakably" contains a "delegation

5  provision"—one that delegates threshold issues of arbitrability to the arbitrator—the FAA requires

6  a court to "compel[] arbitration" of that threshold issue. *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S.

7  63, 68–70, 70 n.1 (2010) (citation omitted). The Ninth Circuit has held that "incorporation of the

8  AAA [American Arbitration Association] rules constitutes 'clear and unmistakable' evidence that

9  contracting parties agreed to arbitrate arbitrability." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130

10  (9th Cir. 2015). That precedent squarely applies here, as the TOS states "[t]he arbitration will be

11  governed by the Consumer Arbitration Rules of the American Arbitration Association ('AAA'), if

12  applicable, as modified by this section." McGuane Decl. ¶ 9.

13  Even if this Court were to determine arbitrability, the arbitration provision in the TOS

14  plainly applies to Plaintiff's claim, as it encompasses "any and all disputes that have arisen or may

15  arise between [Plaintiff] and the PeopleConnect entities." McGuane Decl. ¶ 8.

## II.   Plaintiff's Claim Is Barred By Federal Law.

17  Because the motion to compel arbitration is dispositive, the Court need not reach any other

18  issue in this case and should dismiss on that basis alone. But assuming *arguendo* that Plaintiff is

19  not bound by her arbitration agreement, the Court should dismiss the Complaint for the same

20  reason the court in *Ancestry.com* dismissed that Complaint: federal law bars Plaintiff's claim. First,

21  the Communications Decency Act of 1996 makes PeopleConnect immune from Plaintiff's claim.

22  47 U.S.C. § 230(c)(1). Second, Plaintiff's claim is preempted by the Copyright Act. 17 U.S.C.

23  § 301. These defenses are plain from Plaintiff's allegations alone, so the Court should dismiss the

---

[3] If the Court does not grant PeopleConnect's motion, PeopleConnect requests leave to engage in limited discovery regarding: (1) Plaintiff's knowledge of and acquiescence to counsel's use of Classmates.com on her behalf, and (2) the identity of the person who took the screenshots that appear in the complaint. Order Den. Mot. to Compel Arb. & Granting Leave to Seek Ltd. Disc. at 1, *Indep. Living Res. Ctr. San Francisco*, No. 18-cv-06503 (N.D. Cal. May 6, 2019), ECF No. 35 (denying motion to compel arbitration without prejudice and allowing "limited discovery" to "clarify the issue" of whether the app "testers were Plaintiffs' agents"); *see also Hesse v. Sprint Spectrum, L.P.,* No. C06-0592, 2012 WL 37399, at *2 (W.D. Wash. Jan. 9, 2012) (granting limited discovery into the issue of arbitrability).

JENNER & BLOCK LLP
633 WEST 5TH STREET
LOS ANGELES, CA 90071
TELEPHONE: 213 239-5100

Complaint pursuant to Rule 12(b)(6). *See e.g.*, *Kimzey v. Yelp Inc.*, 21 F. Supp. 3d 1120, 1123 (W.D. Wash. 2014)*, aff'd sub nom. Kimzey v. Yelp! Inc.*, 836 F.3d 1263 (9th Cir. 2016) (granting motion to dismiss based on Section 230 immunity); *Milo & Gabby, LLC v. Amazon.com, Inc.,* 12 F. Supp. 3d 1341, 1350 (W.D. Wash. 2014) (granting motion to dismiss right of publicity claim based on Copyright Act preemption).

### A.   The Communications Decency Act Bars Plaintiff's Claim.

Section 230 of the Communications Decency Act provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1).

Another court in this Circuit recently held that Section 230 bars a virtually identical claim. *Callahan v. Ancestry.com,* No. 20-cv-08437, 2021 WL 783524, at *1, *6, *6 n.13 (N.D. Cal. Mar. 1, 2021). In *Ancestry.com,* plaintiffs "object[ed] to Ancestry.com's inclusion of their decades-old yearbook photographs and information in Ancestry's Yearbook Database." *Id.* at *1. Ancestry.com moved to dismiss, in part based on Section 230, and the court held that because "Ancestry—by taking information and photos from the donated yearbooks and republishing them on its website in an altered format—engaged in 'a publisher's traditional editorial functions'" and did "not contribute 'materially' to the content," Section 230 applied. *Id.* at *6.

The *Ancestry.com* decision flows directly from Ninth Circuit precedent. When the underlying content complained of is provided by third parties, it makes no difference that a website "provide[s] neutral tools" that allow people to find that republished information through "their voluntary inputs." *See Fair Hous. Council of San Fernando Valley v. Roommates.Com, LLC*, 521 F.3d 1157, 1172 (9th Cir. 2008) (en banc). Indeed, it is for largely that same reason the Ninth Circuit in *Kimzey v. Yelp! Inc*. rejected the argument that "Yelp transformed [a] review by [a user] into its own 'advertisement' or 'promotion' on Google." 836 F.3d 1263, 1269 (9th Cir. 2016). The court "fail[ed] to see how Yelp's rating system, which is based on rating inputs from third parties and which reduces this information into a single, aggregate metric is anything other than user-generated data." *See id.* at 1270; *accord Force v. Facebook, Inc*., 934 F.3d 53, 65–71 (2d Cir. 2019) (affirming Facebook's status as a "publisher" under Section 230); *Jones v. Dirty World Ent.*

DEFENDANT'S MOTION TO DISMISS – 6
2:21-CV-00262-MJP

JENNER & BLOCK LLP
633 WEST 5TH STREET
LOS ANGELES, CA 90071
TELEPHONE: 213 239-5100

1   *Recordings LLC*, 755 F.3d 398, 413–16, 417 (6th Cir. 2014) (finding defendant website immune

2   from suit because it exercised a "publisher's traditional editorial functions") (citation omitted).

3   This Court should reach the same result. Section 230 makes a defendant immune from a

4   claim that would impose liability on: "(1) a provider or user of an interactive computer service

5   (2) whom a plaintiff seeks to treat, under a state law cause of action, as a publisher or speaker (3)

6   of information provided by another information content provider." *Kimzey*, 836 F.3d at 1268

7   (citation omitted). This test is met here.

8   *First*, PeopleConnect, as owners of a website used by millions, are "provider[s] … of an

9   interactive computer service." *Id.* ("[T]oday, the most common interactive computer services are

10  websites.") (citation omitted).

11  *Second*, Plaintiff's claim is premised on PeopleConnect's republication and distribution of

12  content from student yearbooks, Compl. ¶¶ 2, 6–7, 13–14, and thus is "directed against

13  [PeopleConnect] in its capacity as a publisher or speaker," *Kimzey*, 836 F.3d at 1268. That is,

14  because Plaintiff's claim depends on PeopleConnect's dissemination of Plaintiff's information

15  from her yearbooks, it triggers Section 230 immunity. *See, e.g.*, *Liberi v. Taitz*, No. 11-0485, 2011

16  WL 13315691, at *11 (C.D. Cal. Oct. 17, 2011) (Section 230 would bar claims that Intelius, Reed

17  Defendants, and LexisNexis sold information for credit reports without proper security

18  precautions). Indeed, the recent decision in *Ancestry.com* barred virtually identical claims for that

19  very reason. 2021 WL 783524, at *6.

20  *Third*, Plaintiff's allegations confirm that PeopleConnect is a publisher "of information

21  provided by another information content provider." *Kimzey*, 836 F.3d at 1268 (citation omitted).

22  The Complaint alleges that PeopleConnect "extract[s]" and "aggregates" "personal information

23  *from school yearbooks*, including names, photographs, schools attended, and other biographical

24  information." Compl. ¶ 2 (emphasis added). Based on similar allegations, the *Ancestry.com* court

25  held that Ancestry was immune because it "did not create the underlying yearbook records and

26  instead obtained them from third parties." 2021 WL 783524, at *1, *5. That follows from the many

27  other courts that have held that businesses that search or ask for information from other sources

28  and republish it in new forms receive Section 230 immunity. *E.g.*, *Marshall's Locksmith Serv. Inc.*

DEFENDANT'S MOTION TO DISMISS – 7
2:21-CV-00262-MJP

*v. Google, LLC*, 925 F.3d 1263, 1268–69 (D.C. Cir. 2019) (search engines pulling information from fake locksmiths' websites for search results); *Ben Ezra, Weinstein, & Co. v. Am. Online Inc.*, 206 F.3d 980, 983, 985–86 (10th Cir. 2000) (AOL publishing stock price information pulled for AOL by third-party providers); *accord Obado v. Magedson*, No. 13-2382, 2014 WL 3778261, at *1, * 4–7 (D.N.J. July 31, 2014), *aff'd*, 612 F. App'x 90, 93–94 (3d Cir. 2015); *Liberi*, 2011 WL 13315691, at *11.

"[R]eviewing courts have treated § 230(c) immunity as quite robust." *Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119, 1123 (9th Cir. 2003). Section 230 easily covers Plaintiff's claim, which seeks to punish PeopleConnect for disseminating information about Plaintiff created by others. *See Ancestry.com*, 2021 WL 783524, at *6.

## B.      The Copyright Act Preempts Plaintiff's Claim.

When a copyrightable work is disseminated to the public and an individual allegedly suffers harm as a result, federal copyright law is the exclusive means of redress. This is true regardless of whether the work at issue is actually copyrighted, *Firoozye v. Earthlink Network*, 153 F. Supp. 2d 1115, 1124 (N.D. Cal. 2001), or whether either party owns the copyright, *Maloney v. T3Media, Inc.*, 94 F. Supp. 3d 1128, 1139 n.9 (C.D. Cal. 2015), *aff'd*, 853 F.3d 1004 (9th Cir. 2017); *see Jules Jordan Video, Inc. v. 144942 Canada Inc.*, 617 F.3d 1146, 1154–55 (9th Cir. 2010). Under 17 U.S.C. § 301, a claim is preempted if: (1) the "'subject matter' of the state law claim falls within the subject matter of copyright as described in 17 U.S.C. §§ 102 and 103," and (2) the "rights asserted under state law are equivalent to the rights contained in 17 U.S.C. § 106." *Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1010 (9th Cir. 2017) (citation omitted); *see also Milo & Gabby, LLC,* 12 F. Supp. 3d at 1350. Plaintiff's claim satisfies this test and is preempted by the Copyright Act.

*First*, the "subject matter" of Plaintiff's claim falls within 17 U.S.C. §§ 102 and 103. Plaintiff's claim concerns PeopleConnect's use of her "name," "photograph," and "likeness[]," Compl. ¶¶ 1–2, 6, 9, which "falls within the subject matter of copyright." *Maloney*, 853 F.3d at 1010; *see also Milo & Gabby, LLC* 12 F. Supp. 3d at 1349. Yearbooks are copyrightable because they are "[w]orks of authorship" containing "pictorial, graphic," and "literary works," 17 U.S.C.

JENNER & BLOCK LLP
633 WEST 5TH STREET
LOS ANGELES, CA 90071
TELEPHONE: 213 239-5100

§ 102; or "compilations" thereof, *id.* § 103; *see id.* § 101 (defining "[l]iterary works" to include "books" and defining "pictorial" and "graphic" works to include "photographs"). That is why the Copyright Office has granted copyright protection for school yearbooks. *E.g.*, Don Novello, *Shellville High School, The Blade*, TX0001451935, Public Catalog, U.S. Copyright Office (Oct. 30, 1984), https://bit.ly/2NE5Aui. Excerpted portions of yearbooks are no different, regardless of whether they contain photographs or text. Photographs are copyrightable. 17 U.S.C. §§ 101; 102; *Maloney*, 94 F. Supp. 3d at 1135–36 (plaintiffs' right of publicity claims challenging website's use of photographs preempted). So too are excerpted pages from yearbooks containing photographs and other identifying information. 17 U.S.C. § 102; *see* Compl. ¶¶ 6, 8, images 2, 4. That the excerpted pages constitute a portion of a yearbook makes no difference. *See Jules Jordan Video*, 617 F.3d at 1154–55 (right of publicity claims preempted with respect to "'still shots' of the copyrighted video performance" used "on the covers of the counterfeit DVDs"); *Laws v. Sony Music Ent., Inc.*, 448 F.3d 1134, 1136, 1141 (9th Cir. 2006) (right of publicity claims preempted where defendant used "brief samples" of plaintiff's voice recording).

*Second*, the rights asserted under Plaintiff's ORPS claim is the same "rights governed exclusively by copyright law." *Maloney*, 853 F.3d at 1011. These "exclusive rights" include the right to publicly "display" the work and "reproduce" it. *Id.* at 1019. These are the rights Plaintiff seeks to hold PeopleConnect liable for exercising—reproducing and displaying the excerpts of the yearbooks to the public on Classmates.com. *See, e.g.*, Compl. ¶¶ 6–9.[4]

Plaintiff's claim is preempted because the subject matter of her claim—PeopleConnect's excerpts of her yearbook featuring her photo and name—"fall directly within the scope of federal copyright protection" and the rights asserted under ORPS are "equivalent" to those contained in the Copyright Act. *Milo & Gabby, LLC*, 12 F. Supp. 3d at 1347, 1349–50.

---

[4] Plaintiff's inaccurate use of the word "advertising" throughout her Complaint makes no difference to this analysis—in *Maloney*, for example, the plaintiffs alleged the defendant used their "names, images, and likenesses … for the purpose of advertising" and both the district court and the Ninth Circuit nonetheless held that those claims were preempted. 94 F. Supp. 3d at 1138–39; *see also* 853 F.3d at 1011.

JENNER & BLOCK LLP
633 WEST 5TH STREET
LOS ANGELES, CA 90071
TELEPHONE: 213 239-5100

**III.    Plaintiff Has Failed To State A Claim Under ORPS.**

The Complaint also should be dismissed because it fails to state a claim under ORPS. First, Plaintiff fails to plead a violation within the jurisdictional reach of ORPS. Second, the Complaint fails to plead all of the elements of a *prima facie* ORPS claim. Third, Plaintiff's claim is barred by ORPS's statutory exemptions.

**A.    Plaintiff Fails To Plead Conduct Within The Territorial Scope Of ORPS.**

Ohio statutes "are presumed not to have an extraterritorial effect unless the legislature clearly manifests a contrary intent." *Mitchell v. Abercrombie & Fitch*, No. C2-04-306, 2005 WL 1159412, at *3 (S.D. Ohio May 17, 2005). The legislature did not express that ORPS would have extraterritorial reach. When a statute does not have extraterritorial reach, a plaintiff must plead that the alleged violation occurred in Ohio. *See id.* at *4.

Plaintiff has not done so. She alleges PeopleConnect violated ORPS only by "includ[ing] Plaintiff's name and photo" to advertise a membership to Classmates.com. Compl. ¶ 6. The only other mention of Ohio is Plaintiff's allegation that she is an Ohio citizen. *Id.* ¶¶ 15, 38. That is not enough to show that the alleged violation occurred in Ohio. To the contrary, Plaintiff acknowledges that the location and state of incorporation of PeopleConnect do not provide any connection to Ohio. *Id.* ¶¶ 16, 18. Given Plaintiff's claim, PeopleConnect only could have "used" her identity in Ohio if it displayed such a search result to a user physically located *in Ohio*. Yet the Complaint contains no such allegation.

**B.    Plaintiff Fails To Plead A *Prima Facie* ORPS Claim.**

ORPS provides that "a person shall not use any aspect of an individual's persona for a commercial purpose." Ohio Rev. Code § 2741.02(A). To plead a *prima facie* claim under ORPS, a plaintiff must allege: (1) the "use" of (2) "any aspect of an individual's persona" for (3) "a commercial purpose." *id.*; *see* § 2741.01(B); *Harvey v. Sys. Effect, LLC*, 154 N.E.3d 293, 306–07 (Ohio Ct. App. 2020). Plaintiff fails to plead the "use" of her persona for a commercial purpose.

**1.    Plaintiff Fails To Plead "Use" Of Her Persona.**

To state a claim, Plaintiff must allege that PeopleConnect engaged in a "use" of her identity. Ohio Rev. Code § 2741.02(A). This requires the actual publication of the person's

identity. *See, e.g.*, *Jackson v. Playboy Enters., Inc.*, 574 F. Supp. 10, 13 (S.D. Ohio 1983) (dismissing common law misappropriation of likeness claim because plaintiffs had not "alleged that their names or identities were publicized"); *Fox v. Nationwide Mut. Ins. Co.*, 117 N.E.3d 121, 145 (Ohio Ct. App. 2018) (rejecting common law misappropriation of likeness claim for failure to show misappropriation was publicized). Yet Plaintiff's Complaint never alleges that anyone ever conducted a search for Plaintiff's high school or viewed a yearbook excerpt that contained her name or photograph. *See* Compl. ¶ 9. All Plaintiff alleges is that she "discovered that Classmates uses her name and photo" on its website and that Classmates.com users are "free to enter the information of a particular school." Compl. ¶¶ 4, 20. She then proceeds to supply self-generated images that do nothing more than confirm that Plaintiff's agent—her attorney—performed searches for her on Classmates.com. *See id.* ¶¶ 6, 8.

That is not enough. Plaintiff does not identify *who* other than Plaintiff herself, or her agent, allegedly viewed her identity on Classmates.com. A self-generated, nonpublic "use" of a person's identity is not actionable under ORPS, as nothing in the statute's text or case law suggests that it was intended to apply where the defendant showed the plaintiff her *own* identity *to her or her agents* in response to *an inquiry from her or her agents on her behalf*. To the contrary, ORPS's "primary focus is the value of a person's name, vis-à-vis his or her ability to market it for commercial purposes." *Harvey*, 154 N.E.3d at 308. Plaintiff's proposed application is far afield from this purpose, and PeopleConnect is not aware of any precedent allowing a claim to proceed under analogous circumstances.

### 2. Plaintiff Does Not Allege Her Persona Has Commercial Value.

Plaintiff also fails to plead that her persona has "commercial value." Ohio Rev. Code § 2741.01(A). To state an ORPS claim, a plaintiff must allege facts showing a "significant 'commercial value'" in associating an item of commerce with her identity. *See Harvey*, 154 N.E.3d at 306 (citation omitted). Absent such a showing, an ORPS claim fails. *See Jackson*, 574 F. Supp. at 13 (dismissing Ohio common law misappropriation of likeness claim for failure to plead likeness had "intrinsic value"); *Harvey*, 154 N.E.3d at 306 (rejecting ORPS claim where plaintiff did not show her name "had significant value or, indeed, any commercial value"); *Roe v. Amazon.com*,

DEFENDANT'S MOTION TO DISMISS – 11
2:21-CV-00262-MJP

714 F. App'x 565, 568–69 (6th Cir. 2017) (rejecting ORPS claim where plaintiffs failed to show their likenesses had commercial value); *Landham v. Lewis Galoob Toys, Inc.*, 227 F.3d 619, 623–24 (6th Cir. 2000) (same, Kentucky common law right of publicity claim).

To determine if a persona has "commercial value," courts consider: (1) "the distinctiveness of the identity"; and (2) "the degree of recognition of the person among those receiving the publicity." *Harvey*, 154 N.E.3d at 306 (citation omitted). Plaintiff alleges no facts showing that her persona has significant commercial value. She does not allege anything "distinctive[]" about her persona. Nor does Plaintiff allege she has any "degree of recognition" among the public or other group. *Id.* (plaintiff must have "notoriety which is strong enough to have commercial value within an identifiable group") (citation omitted). Plaintiff alleges the yearbook excerpts are used to "entice users to purchase [PeopleConnect]'s services. Compl. ¶ 8. But these allegations fail to show that *Plaintiff's* identity was distinct or recognizable enough to "entice" the purchase of PeopleConnect's services. *See Harvey*, 154 N.E.3d at 306; *Landham*, 227 F.3d at 624 (plaintiff "must show that a merchant would gain significant commercial value by associating an article of commerce *with him*") (emphasis added). At bottom, ORPS is designed to protect persons who are famous within—at the very least—an identifiable group. Plaintiff does not allege that is true of her.

## C.     Plaintiff Has Not Pleaded Unlawful Advertising Or Solicitation.

Plaintiff also has not adequately pleaded that PeopleConnect used her identity for a "commercial purpose." Ohio Rev. Code §§ 2741.02(A); 2741.01(B)(2).

### 1.     PeopleConnect's Yearbook Previews Have An Informational Purpose.

Plaintiff alleges that PeopleConnect used her identity for a commercial purpose by displaying her "name and photo" in a yearbook excerpt in a "limited, free preview," which Plaintiff alleges "entice[s] users to purchase" a subscription to Classmates.com. *Id.* ¶¶ 6, 8. But her allegations in the Complaint fall short because PeopleConnect's yearbook excerpts have an informational, not a commercial, purpose.

Content that has an informational purpose cannot be the basis of an ORPS claim. As the Sixth Circuit has held, Ohio right of publicity law follows the Restatement (Third) of Unfair

Competition, under which "the use of a person's identity primarily for the purpose of communicating information or expressing ideas is not generally actionable," to hold that where the "informational and creative content of the defendant's use" outweighs any "adverse effect" on the market, that use does not constitute a statutory violation. *ETW Corp. v. Jireh Publ'g, Inc.*, 332 F.3d 915, 930, 937 (6th Cir. 2003) (citation omitted). Thus, one court has held that even a claim arising from the dissemination of nude photographs by a for-profit website was not for "a commercial purpose" under ORPS because the photographs contained "factual and historical information of [p]laintiff's public activities." *Balsley v. LFP, Inc.*, No. 08 CV 491, 2010 WL 11561844, at *9 (N.D. Ohio Jan. 26, 2010); *see Vinci v. Am. Can Co.*, 591 N.E.2d 793, 794 (Ohio Ct. App. 1990) (rejecting right of publicity claim for use of Olympic athletes' names and likenesses on Dixie cups because they provided "accurate, historical information").

This rule applies with added force where, as here, PeopleConnect did not use Plaintiff's likeness "in a way that would suggest that Plaintiff endorsed or promoted" its product. *Balsley*, 2010 WL 11561844, at *9; *see Vinci*, 591 N.E.2d at 794 ("[T]here was no implication that the athletes used, supported, or promoted the product."). Under such circumstances, the use of a person's identity is "incidental," which cannot be the basis of a right of publicity claim. *See Balsley*, 2010 WL 11561844, at *9; *Vinci*, 591 N.E.2d at 794; *Zacchini v. Scripps-Howard Broad. Co.*, 351 N.E.2d 454, 458 (Ohio 1976), *overruled on other grounds*, 433 U.S. 562 (1977) (distinguishing the "mere incidental use of a person's name and likeness, which is not actionable, from appropriation of the benefits associated with the person's identity, which is"); *Roe*, 714 F. App'x at 569 (rejecting ORPS claim based on "incidental" use of plaintiff's images).

Here, Plaintiff's allegations show that the free preview of a yearbook excerpt has a clear informational purpose: the yearbook excerpts are generated in response to a user search. *See* Compl. ¶ 4. The "search results" indicate whether the user's search "corresponds to a school of which Classmates sells their yearbook service." Compl. ¶¶ 4–5. The information underlying Plaintiff's claim—her "name and photo" (*id.* ¶ 6)—also is informational, in that it is "factual" information about a person. *Balsley*, 2010 WL 11561844, at *9. Absent this information, PeopleConnect would have no way to inform users whether Classmates.com sells a copy of the

relevant yearbook. Moreover, Plaintiff does not and cannot allege that PeopleConnect's display of yearbook excerpts suggests that she endorses PeopleConnect's products.

Consistent with these principles, courts have found that a website does not use a person's identity for a "commercial purpose" by identifying the person as the subject of the work or online record in response to a user query. *E.g.*, *Dobrowolski v. Intelius, Inc.*, No. 17 CV 1406, 2018 WL 11185289, at *3 (N.D. Ill. May, 21 2018) (dismissing Illinois right of publicity claim against website that displayed plaintiff's likeness to promote sale of background reports because "plaintiffs' identities are not used to promote a separate product"); *Obado*, 2014 WL 3778261, at *7 (dismissing New Jersey right of publicity against websites that display plaintiff's likeness to promote sale of access to "publically available materials connected to plaintiff's name") (citation omitted). Put otherwise, right of publicity statutes "prohibit[] the use of an individual's image [or identity] to promote or entice the purchase of *some other product*," but do not prohibit using an individual's identity when "a photograph of [the] person" or another work about the person is the very thing the consumer "is considering whether to buy." *Thompson v. Getty Images (US), Inc.*, No. 13 C 1063, 2013 WL 3321612, at *2 (N.D. Ill. July 1, 2013) (emphasis added); *see Gionfriddo v. Major League Baseball*, 94 Cal. App. 4th 400, 413 (Cal. Ct. App. 2001) ("[A]dvertisements are actionable when the plaintiff's identity is used, without consent, to promote an *unrelated* product.").[5] Because Plaintiff alleges that PeopleConnect uses her persona only in connection with a product that contains access to *her* yearbook, she has failed to plead the "commercial purpose" element. Ohio Rev. Code § 2741.02(A).

### 2. Referencing A "Monthly Subscription Service" Does Not Plead A Commercial Purpose.

Plaintiff's identity was used in a search result only as "part of the product [*i.e.*, the membership to Classmates.com] offered for sale," which is not a "commercial purpose."

---

[5] *See also Nieman v. Versuslaw, Inc.*, No. 12-3104, 2012 WL 3201931, at *4, *7 (C.D. Ill. Aug. 3, 2012), *aff'd*, 512 F. App'x 635 (7th Cir. 2013) (dismissing Illinois right of publicity claim against online search database of court records who displayed plaintiff's name in online search results and "link[ed] to copies of [documents] . . . in the [p]laintiff's case" which a user could "access[] for a fee" because plaintiff's "name is used only to find documents related to his case").

JENNER & BLOCK LLP
633 WEST 5TH STREET
LOS ANGELES, CA 90071
TELEPHONE: 213 239-5100

*Dobrowolski*, 2018 WL 11185289, at *3; *see Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1326 (11th Cir. 2006) (book cover containing plaintiff's photo did not use plaintiff's identity for "commercial purpose" under Florida right of publicity law); *Thompson,* 2013 WL 3321612, at *2; *Gionfriddo*, 94 Cal. App. 4th at 413 (in right of publicity cases, "advertisements are actionable when the plaintiff's identity is used, without consent, to promote an *unrelated* product").

First, Plaintiff's conclusory assertions that PeopleConnect uses her identity to "advertise" its "subscription service" are refuted by her actual allegations. Compl. ¶ 14. Many of the screenshots Plaintiff cites reference the sale of yearbooks or a free membership, *not* a paid "subscription service." *See, e.g., id.* ¶ 8, images 1 ("Order a Hardcover Reprint"), 2 ("Join for free . . . ."). Those that do reference a paid membership plan either do not include Plaintiff's identity (*e.g.,* Compl. ¶ 8, images 3, 5) or are generic menu options like "Help" and "Account," not advertisements (*e.g.,* Compl. ¶ 8, image 4). None of these constitute advertisements for a "subscription service."

Second, even if Plaintiff's identity had been used to advertise a "subscription service," Plaintiff still could not show a commercial purpose because the yearbook excerpts in which Plaintiff appears are "*part* of the product"—the membership subscription—"offered for sale." *Dobrowolski,* 2018 WL 11185289, at *3 (emphasis added). Plaintiff makes the conclusory assertion that the "subscription service" is "completely unrelated" to the yearbooks themselves. Compl. ¶¶ 9, 10. Not so. Plaintiff's allegations make clear that access to the yearbooks (which contain Plaintiff's identity) is part of its subscription service. *See* Compl. ¶ 8, images 1, 3, 5 ("[s]ave" on "[y]earbook [r]eprints").

### D.   Plaintiff's Claim Falls Within ORPS's Exemptions.

Finally, ORPS exempts various uses of an individual's identity to which the Act does not apply. *See* Ohio Rev. Code § 2741.02(D)(1); *id*. § 2741.09(A). "[A]ny one of these grounds would suffice to preclude liability." *Harvey*, 154 N.E.3d at 309. Several of them do here.

### 1.   The "Literary Work" Exemption Bars Plaintiff's Claim.

ORPS does not apply to "[a] literary work, dramatic work, fictional work, historical work, audiovisual work, or musical work regardless of the media in which the work appears or is

JENNER & BLOCK LLP
633 WEST 5TH STREET
LOS ANGELES, CA 90071
TELEPHONE: 213 239-5100

transmitted" or "[a]n advertisement or commercial announcement" for such a work. Ohio Rev. Code § 2741.09(A)(1)(a), (d). "Literary work[]" is commonly understood to include works "expressed in words, numbers, or other verbal or numerical symbols or indicia, regardless of the nature of the material objects," including "books," "periodicals," and "manuscripts." *E.g.*, 17 U.S.C. § 101. PeopleConnect's yearbook previews fall within the broad category of "literary work[]," as they are written documents that provide factual, biographical information to a reader about a particular person. *See* Ohio Rev. Code § 2741.09(A)(1)(a); *see also* Compl. ¶¶ 1, 6–7, 23.

To be sure, Plaintiff does not claim the online publication of yearbooks are unlawful—only the yearbook excerpts, which she alleges constitute an "advertisement[] on the Classmates website to advertise and/or actually sell [PeopleConnect]'s products and services." Compl. ¶ 20. But even if this description of the yearbook excerpts was accurate, though it is not, it would not help Plaintiff, as ORPS expressly exempts any "advertisement or commercial announcement" for literary works. Ohio Rev. Code § 2741.09(A)(1)(a), (d). So even if Plaintiff were correct that the preview of yearbook excerpts are "advertisements," because the materials they purportedly promote—the sale of reprinted yearbooks—are exempt, the limited preview of yearbook excerpts also would be exempt.

### 2.    The "Newsworthy Value," "Public Affairs," And "General Public Interest" Exemptions Bar Plaintiff's Claim.

ORPS also carves out the: (1) "use of an aspect of an individual's persona in connection with any news, public affairs, sports broadcast or account"; (2) "[m]aterial that has political or newsworthy value"; and (3) "use of an aspect of an individual's persona in connection with the broadcast or reporting of an event or topic of general or public interest." Ohio Rev. Code §§ 2741.02(D)(1); 2741.09(A)(1)(b), (A)(3). Any "advertisement or commercial announcement" for material with "political or newsworthy value" is likewise exempted. *Id.* § 2741.09(A)(1)(d), (b). Information and events can be in the "public interest" under ORPS even if they "involve[] the publication of a purely private person's name or likeness." *Balsley*, 2010 WL 11561844, at *10 (citation omitted).

DEFENDANT'S MOTION TO DISMISS – 16
2:21-CV-00262-MJP

JENNER & BLOCK LLP
633 WEST 5TH STREET
LOS ANGELES, CA 90071
TELEPHONE: 213 239-5100

Under these exemptions, the "use of a person's identity primarily for the purpose of communicating information . . . is not generally actionable[.]" *See Harvey*, 154 N.E.3d at 308 (quoting *ETW Corp.*, 332 F.3d at 930) (emphasis omitted). Courts in Ohio and elsewhere have held that such exemptions apply to the republication of documents that already have been published. *E.g. id.* at 309 (applying exemption where use of plaintiff's identity involved facts relating to prior legal proceeding that "had been reported in various publications"); *Aronson v. Dog Eat Dog Films, Inc.*, 738 F. Supp. 2d 1104, 1114 (W.D. Wash. 2010) (reasoning that if purpose of use of plaintiff's likeness is "informative or cultural, the use is immune" from suit under Washington's right of publicity statute); *Nieman v. Versuslaw, Inc.*, No. 12-3104, 2012 WL 3201931, at *4 (C.D. Ill. Aug. 3, 2012), *aff'd*, 512 F. App'x 635 (7th Cir. 2013) (applying similar exemption to dismiss right of publicity claim against online searchable database of court records because "[p]laintiff's prior litigation is a matter of public record and public interest"); *Best v. Berard*, 776 F. Supp. 2d 752, 758–59 (N.D. Ill. 2011) (applying similar exemption to dismiss right of publicity claim against TV show depicting plaintiff's "arrest on criminal charges and facts concerning prior arrests or citations"); *Baugh v. CBS, Inc.*, 828 F. Supp. 745, 753 (N.D. Cal. 1993) (holding that the "appropriate focus is on the use of the likeness itself" such that if plaintiff's "face was used 'in connection' with a news account, then no liability may be found").

PeopleConnect's yearbook excerpts fall within all of these exemptions. As discussed above, these excerpts are informational and do not propose a commercial transaction. *See Harvey*, 154 N.E.3d at 308. Plaintiff does not allege that the publication of the yearbook itself is unlawful. Compl. ¶ 14 ("It would be simple for Classmates to maintain their business model while still complying with state law....Classmates could sell Plaintiff's information on an individual basis...."). These yearbook excerpts are newsworthy and relate to "public affairs." Ohio Rev. Code § 2741.02(D)(1). *See Harvey*, 154 N.E.3d at 308; *Balsley*, 2010 WL 11561844, at *10.

### 3.    The First Amendment Exemption Bars Plaintiff's Claim.

The ORPS also exempts the use of an individual's persona that is "protected by the First Amendment to the United States Constitution as long as the use does not convey or reasonably suggest endorsement by the individual whose persona is at issue." Ohio Rev. Code

DEFENDANT'S MOTION TO DISMISS – 17
2:21-CV-00262-MJP

JENNER & BLOCK LLP
633 WEST 5TH STREET
LOS ANGELES, CA 90071
TELEPHONE: 213 239-5100

§ 2741.09(A)(6). Plaintiff does not and cannot allege that PeopleConnect's free preview of yearbook excerpts "convey or reasonably suggest endorsement" by the Plaintiff. *Id.* And for reasons discussed below, PeopleConnect's use of Plaintiff's persona is protected speech under the First Amendment.

### IV.   Plaintiff's Claim Is Barred By The United States Constitution.

Finally, even if Plaintiff could overcome the other failings of her Complaint, it still would not be viable because applying ORPS here violates at least two provisions of the United States Constitution.

### A.   The Conduct Alleged Is Core First Amendment Speech.

The Sixth Circuit has recognized that the reach of ORPS is "fundamentally constrained by the public and constitutional interest in freedom of expression" and that courts applying ORPS must therefore "give substantial weight to the public interest in freedom of expression when balancing it against the personal and proprietary interests recognized by the right of publicity." *ETW Corp.*, 332 F.3d at 930–31 (citation omitted). That plainly is called for in this case. "[T]he creation and dissemination of information are speech within the meaning of the First Amendment." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 570 (2011). As courts have long recognized, where a person's name, image, or likeness is used in speech for "informative or cultural" purposes, the First Amendment renders the use "immune" from liability. *New Kids on the Block v. News Am. Publ'g, Inc.*, 745 F. Supp. 1540, 1546 (C.D. Cal. 1990), *aff'd*, 971 F.2d 302 (9th Cir. 1992).

The yearbook excerpts Plaintiff takes issue with easily qualify as core constitutionally protected speech under this standard. Indeed, "[t]here can be no serious argument about the fact that, in its most basic form, the yearbook serves as a forum in which student editors present pictures, captions, and other written material." *Kincaid v. Gibson*, 236 F.3d 342, 351 (6th Cir. 2001). And the "written material" within those yearbooks, *id.*, such as the "biographical information" Plaintiff seeks to prevent PeopleConnect from releasing, are likewise protected. *See* Compl. ¶ 2; *see Sorrell,* 564 U.S. at 570; *Vrdolyak v. Avvo, Inc.,* 206 F. Supp. 3d 1384, 1388–89 (N.D. Ill. 2016) (holding that the First Amendment protects online directory of attorneys, and that the directory constitutes expression for purposes of the First Amendment); *Dex Media W., Inc. v.*

JENNER & BLOCK LLP
633 WEST 5TH STREET
LOS ANGELES, CA 90071
TELEPHONE: 213 239-5100

1   *City of Seattle,* 696 F.3d 952, 954 (9th Cir. 2012) (concluding that "the yellow pages directories

2   qualify for full protection under the First Amendment"). As Plaintiff's Complaint makes clear, the

3   materials she seeks to suppress are a source of information and interest for millions of readers. *See,*

4   *e.g.,* Compl. ¶¶ 2, 28.

5           Moreover, the publication of information already in the public domain is particularly

6   sacrosanct. *Nieman*, 512 F. App'x at 638; *see Willan v. Columbia Cnty.*, 280 F.3d 1160, 1163 (7th

7   Cir. 2002). Indeed, it is axiomatic that the First Amendment protects the dissemination of

8   information drawn from public records. *E.g.*, *Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 495 (1975);

9   *see also Ostergren v. Cuccinelli*, 615 F.3d 263, 286–87 (4th Cir. 2010). Here, the screenshots

10  Plaintiff includes in her Complaint are excerpts of her already published school yearbook. Compl.

11  ¶ 8, images 1, 2, and 4. That is exactly the type of information that is by its very nature already in

12  the public domain, and commonly found in public records. *See Vrdolyak*, 206 F. Supp. 3d at 1386,

13  1389 (holding that First Amendment precludes IRPA liability for online directory of attorneys with

14  identifying "information gleaned from public records"). So, although, as noted above, the

15  dissemination of truthful, factual information about individuals need not be in the public domain

16  to merit full First Amendment protection, *e.g.*, *Dex*, 696 F.3d at 962, the fact the challenged

17  information here *is* in the public domain makes this case a straightforward one.

18          The protected nature of PeopleConnect's speech does not vanish because Plaintiff

19  characterizes the yearbook excerpts as "free preview[s]" that "advertise" PeopleConnect's

20  services. Compl. ¶¶ 6, 13. *E.g.*, *Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New*

21  *York*, 447 U.S. 557, 564–66 (1980). But more fundamentally, even if the yearbook excerpts could

22  be properly characterized as "advertisements," when an advertisement promotes an activity that is

23  "protected by the First Amendment," the advertisement receives the same protection as the

24  underlying activity. *See Bolger v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 67 n.14 (1983); *Cher*

25  *v. Forum Int'l, Ltd.*, 692 F.2d 634, 637–39 (9th Cir. 1982), *abrogated on other grounds as*

26  *recognized in McQuiston v. Marsh*, 790 F.2d 798, 801 (9th Cir. 1986); *William O'Neil & Co. v.*

27  *Validea.com Inc.*, 202 F. Supp. 2d 1113, 1118–19 (C.D. Cal. 2002); *Page v. Something Weird*

28

DEFENDANT'S MOTION TO DISMISS – 19
2:21-CV-00262-MJP

JENNER & BLOCK LLP
633 WEST 5TH STREET
LOS ANGELES, CA 90071
TELEPHONE: 213 239-5100

*Video*, 960 F. Supp. 1438, 1443 (C.D. Cal. 1996).[6] Here, the underlying activity is already published high school yearbooks, which is plainly protected speech. *See Kincaid*, 236 F.3d at 351.

### 1.   Plaintiff's Proposed Restriction On Speech Triggers Strict Scrutiny.

Plaintiff's proposed application of ORPS to protected First Amendment speech amounts to a content-based restriction, to which strict scrutiny applies. *See Sarver v. Chartier*, 813 F.3d 891, 903 (9th Cir. 2016) (California's right of publicity law "restricts speech based upon its content"); *IMDb.com Inc. v. Becerra*, 962 F.3d 1111, 1120 (9th Cir. 2020) (restriction of dissemination of age information restricts speech based on content). Under strict scrutiny, laws restricting content are "presumptively unconstitutional" and must be "narrowly tailored to serve compelling state interests" to survive. *Reed v. Town of Gilbert,* 576 U.S. 155, 163 (2015); *see Sorrell*, 564 U.S. at 571 (fact that law is content-based is "all but dispositive"). Here, Plaintiff cannot show that applying ORPS to PeopleConnect's yearbook previews serves a compelling state interest, let alone that it is narrowly tailored.

Because Plaintiff cannot overcome strict scrutiny, Plaintiff likely will argue that yearbook previews are subject to the less demanding review associated with regulations of commercial speech. That is incorrect. Commercial speech is speech that "does no more than propose a commercial transaction." *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 762 (1976) (internal quotation marks and citation omitted). But PeopleConnect's display of yearbook excerpts do not "propose a commercial transaction" at all. *Id*. Not all of the screenshots Plaintiff provides mention a commercial transaction—at most those webpages provide links to other webpages which eventually propose commercial transactions. Compl. ¶ 8, images 2, 3. And, in the lone circumstance where a proposal for a commercial transaction appears on the same page as identifying information about Plaintiff, that information appears as a pop up on the screen, rather than a part of, the proposal itself. *Id*. image 2.

Yet even if the limited preview of yearbook excerpts did "propose a commercial transaction," by Plaintiff's own account, that is not all that they do. *See Dex*, 696 F.3d at 957

---

[6] *Accord Groden v. Random House, Inc.*, 61 F.3d 1045, 1050–51 (2d Cir. 1995); *Esch v. Universal Pictures Co.,* No. 09-cv-02258, 2010 WL 5600989, at *6 (N.D. Ala. Nov. 2, 2010).

JENNER & BLOCK LLP
633 WEST 5TH STREET
LOS ANGELES, CA 90071
TELEPHONE: 213 239-5100

(citation omitted). Plaintiff alleges that these yearbook previews convey factual information: specifically a person's "name and photo." Compl. ¶¶ 6, 20. By disseminating this information to anyone who accesses the Classmates website, the yearbook previews provide a peak into the yearbooks themselves—which Plaintiff cannot dispute does "more than propose a commercial transaction." *Va. State Bd. of Pharmacy*, 425 U.S. at 762 (citation omitted).

Finally, even if Plaintiff's characterization of PeopleConnect's yearbook excerpts as "advertisements" was correct—though it is not—such advertisements still are constitutionally protected to the same extent the yearbooks they advertise are protected. *E.g. Bolger*, 463 U.S. at 66–67, 67 n.14 ("The mere fact that these pamphlets are conceded to be advertisements clearly does not compel the conclusion that they are commercial speech," and where the pamphlet advertises speech protected by the First Amendment they should be deemed non-commercial speech.). Courts have consistently held that, if a publication qualifies as constitutionally protected speech, then disseminating portions of it in advertising for the same publication is likewise protected.[7] There is ample authority that advertisements for subscriptions to constitutionally protected materials are protected to the same degree as the materials themselves. *E.g. Cher*, 692 F.2d at 637–39; *William O'Neil & Co.,* 202 F. Supp. 2d at 1119; *Page*, 960 F. Supp. 2d at 1443. Indeed, there is no principled—let alone constitutional—distinction between speech that encapsulates the entire product offered for sale and speech that provides an example of what the product contains.

## 2.     Plaintiff's Claim Is Barred Even If The Speech Was Commercial.

If the Court concludes that PeopleConnect's speech is commercial, restrictions imposed by ORPS on that speech still "must survive intermediate scrutiny under *Central Hudson.*" *See Italian Colors Rest. v. Becerra*, 878 F.3d 1165, 1176 (9th Cir. 2018). "The *Central Hudson* test first asks whether the speech is either misleading or related to illegal activity. If the speech 'is neither misleading nor related to unlawful activity,' then '[t]he State must assert a substantial interest to

---

[7] *Cher*, 692 F.2d at 637–39; *William O'Neil & Co.,* 202 F. Supp. 2d at 1119; *Page*, 960 F. Supp. at 1443; *Polydoros v. Twentieth Century Fox Film Corp.*, 67 Cal. App. 4th 318, 325 (Cal. Ct. App. 1997); *Montana v. San Jose Mercury News, Inc.*, 34 Cal. App. 4th 790, 796 (Cal. Ct. App. 1995).

DEFENDANT'S MOTION TO DISMISS – 21
2:21-CV-00262-MJP

JENNER & BLOCK LLP
633 WEST 5TH STREET
LOS ANGELES, CA 90071
TELEPHONE: 213 239-5100

be achieved by' the regulation. The regulation must directly advance the asserted interest, and must not be 'more extensive than is necessary to serve that interest.'" *Id.* (quoting *Central Hudson*, 447 U.S. at 563–66) (internal citations omitted). "This requires that there be a reasonable fit between the restriction and the goal, and that the challenged regulation include 'a means narrowly tailored to achieve the desired objective.'" *Ballen v. City of Redmond*, 466 F.3d 736, 742 (9th Cir. 2006) (quoting *Bd. of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 480 (1989)) (internal citation omitted).

Plaintiff cannot satisfy this test. First, Plaintiff does not allege that PeopleConnect's speech is "misleading [or] related to unlawful activity" so there is no substantial interest in its regulation. *Central Hudson*, 447 U.S. at 564; *see Va. State Bd. of Pharmacy*, 425 U.S. at 773 (holding that state may not "suppress the dissemination of concededly truthful information about entirely lawful activity"). Second, there is no reasonable fit between ORPS's primary focus—allowing persons to protect the commercial value of their name, *Harvey*, 154 N.E.3d at 308—and barring PeopleConnect's publication of yearbook excerpts. So even under the commercial speech standard, Plaintiff's claim is barred by the First Amendment.

## B. Applying ORPS To Yearbook Excerpts Violates The Dormant Commerce Clause.

State statutes that "burden, but that do not facially discriminate against, interstate commerce" violate the Constitution's Commerce Clause if they impermissibly burden interstate commerce. *Am. Beverage Ass'n v. Snyder*, 735 F.3d 362, 379 (6th Cir. 2013). Facially neutral statutes that create a disparate impact on interstate commerce are analyzed under *Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970). Under Pike, a facially neutral state law violates the Commerce Clause if "the in-state regulatory benefits of a law outweigh the out-of-state burdens the law places on interstate commerce." *Am. Beverage Ass'n*, 735 F.3d at 379.

Here, applying ORPS to PeopleConnect's display of yearbook excerpts burdens PeopleConnect's ability to engage in interstate commerce in a way that is wholly out of proportion to the *de minimus* state interest in suppressing those results. There is no reasonable connection between the intended aim of ORPS to protect against the false endorsements of products, *ETW*

*Corp.*, 332 F.3d at 924, and a prohibition on PeopleConnect's display of yearbook excerpts. So the state's interest here is negligible, at best.

This negligible interest is far outweighed by the burden on interstate commerce of applying ORPS as Plaintiff proposes. Because of the "boundary-less" nature of the internet, PeopleConnect's business is inherently nationwide and interstate. *Am. Booksellers Found. v. Dean*, 342 F.3d 96, 103 (2d Cir. 2003) ("Because the internet does not recognize geographic boundaries, it is difficult . . . for a state to regulate internet activities without 'project[ing] its legislation into other States.'") (citation omitted). PeopleConnect transmits information across state lines through the internet every hour of every day, providing access to yearbooks to users located across the country. If ORPS forbids PeopleConnect's display of yearbook excerpts, as Plaintiff maintains it does, then PeopleConnect must continually ascertain the precise physical location of each user who views a search result, whether that person is using a tablet, laptop, or smartphone, and then block those search results from displaying to users if they are physically located in Ohio. PeopleConnect's only alternative would be to apply the restrictions imposed by ORPS nationwide, notwithstanding that many states do not have right of publicity laws and those that do differ in scope.[8]

Making PeopleConnect choose between excising Ohio from its nationwide transmission of search results—to the extent it is even technologically feasible—or treating ORPS as a nationwide directive would be an extraordinary interference of one state's law with interstate commerce. It would have the effect of "impermissibly regulat[ing] interstate commerce by controlling conduct beyond the State of [Ohio]." *Am. Beverage Ass'n*, 735 F.3d at 376. This is just what the Commerce Clause forbids.

---

[8] Courts have recognized that the Dormant Commerce Clause often is implicated by state regulation of internet-based businesses, like PeopleConnect. *E.g. Am. Booksellers Found.*, 342 F.3d at 103; *Am. Libraries Ass'n v. Pataki*, 969 F. Supp. 160, 181 (S.D.N.Y. 1997) ("Regulation by any single state can only result in chaos, because at least some states will likely enact laws subjecting Internet users to conflicting obligations."); *ACLU v. Johnson*, 194 F.3d 1149, 1161–62 (10th Cir. 1999) ("[T]he nature of the Internet forecloses the argument that a statute [regulating speech over the Internet] applies only to intrastate communications."); *PSINet, Inc. v. Chapman*, 362 F.3d 227, 240 (4th Cir. 2004) ("Given the broad reach of the Internet, it is difficult to see how a blanket regulation of Internet material . . . can be construed to have only a local effect.").

1

## **CONCLUSION**

2          For the foregoing reasons, the Complaint should be dismissed and Plaintiff compelled to

3  adjudicate her claims in arbitration. In the alternative, the Complaint should be dismissed for the

4  reasons set forth above.

5  Dated this 3rd day of May, 2021.

6

7                                        JENNER & BLOCK LLP

8                                         /s/ *Brent Caslin*
                                         Brent Caslin, Washington State Bar No. 36145
9                                        bcaslin@jenner.com
                                         633 West 5th Street, Suite 3600
10                                       Los Angeles, California 90071-2054
                                         Telephone:  213 239-5100
11

12                                       Attorney for Defendant PeopleConnect, Inc.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT'S MOTION TO DISMISS – 24
2:21-CV-00262-MJP

JENNER & BLOCK LLP
633 WEST 5TH STREET
LOS ANGELES, CA 90071
TELEPHONE: 213 239-5100

## CERTIFICATE OF SERVICE

I hereby certify that on the date given below, I caused the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF which sent notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List.

DATED this 3rd day of May, 2021.

/s/ *Brent Caslin*
Brent Caslin

DEFENDANT'S MOTION TO DISMISS
2:21-CV-00262-MJP

JENNER & BLOCK LLP
633 WEST 5TH STREET
LOS ANGELES, CA 90071
TELEPHONE: 213 239-5100