UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BARBARA KNAPKE, | CASE NO. C21-262 MJP |
| Plaintiff, | ORDER DENYING MOTION TO DISMISS |
| v. | |
| PEOPLECONNECT INC, | |
| Defendant. | |

This matter comes before the Court on the Defendant's Motion to Dismiss. (Dkt. No. 13.) Having reviewed the Motion, Plaintiff Barbara Knapke's Opposition (Dkt. No. 18), the Reply (Dkt. No. 19), the notices of supplemental authority (Dkt. Nos. 23, 24), and all supporting materials, the Court DENIES the Motion.

## BACKGROUND

PeopleConnect owns and operates Classmates.com, a website that offers visitors access to Classmates' digital records database that contains "information from school yearbooks, including names, photographs, schools attended, and other biographical information."

(Complaint ¶¶ 2-3.) (Note: the Court refers to Defendant as Classmates.) "Classmates provides free access to some of the personal information in its database to drive users to purchase its two paid products – reprinted yearbooks that retail for up to $99.95, and a monthly subscription to Classmates.com that retails for approximately $3 per month – and to get page views from non-paying users, from which Classmates profits by selling ad space on its website." (Id. ¶ 2.) Classmates allows internet visitors to search for their school from Classmates' database for free, which may return a result corresponding to a school of which Classmates sells their yearbook services. (Id. ¶ 4-6.) The search results provide a free preview of the services and products with a photo and name of an individual to entice the user to purchase Classmates' services and products. (Id. ¶¶ 6-8.)

Knapke alleges she "discovered that Classmates uses her name and photo in advertisements on the Classmates website to advertise and/or actually sell Defendant's products and services." (Compl. ¶ 20.) Knapke identified herself from the image and believes that others could reasonably do so, as well. (Id. ¶ 21.) She has not consented to the use. (Id. ¶ 23.) Knapke is not a customer of Classmates and has no relationship to Classmates. (Id. ¶ 24.) Knapke alleges that her image and identity have commercial value to Classmates to sell its online services. (Id. ¶ 25.) Yet Knapke has not been compensated by Classmates for the use of her identity. (Id. ¶ 26.) Knapke, a resident of Ohio, seeks to represent a class of similarly-situated Ohio residents who have appeared in an advertisement preview on Classmates. (Id. ¶¶ 15, 27.) She pursues a single claim under the Ohio Right of Publicity Law, Ohio Rev. Code Ann. § 2741.02 (West).

## ANALYSIS

Classmates presents seven arguments in favor of dismissal, as follows: (A) Knapke agreed to arbitrate her claim; (B) Knapke's claim is barred by the Communications Decency Act;

1  (C) Knapke's claim is preempted by the Copyright Act; (D) Knapke has not alleged a viable

2  claim under the Ohio Right of Publicity Law; (E) Knapke's claims fall within an exemption

3  under the Ohio Right of Publicity law; (F) the First Amendment protects Classmates from

4  Knapke's claims; and (G) the "dormant" Commerce Clause renders Knapke's claims subject to

5  dismissal. The Court reviews these arguments, none of which convinces the Court dismissal is

6  proper.

7  **A.    Legal Standard**

8    The Court may dismiss a complaint for "failure to state a claim upon which relief can be

9  granted." Fed. R. Civ. P. 12(b)(6). "A complaint may fail to show a right of relief either by

10 lacking a cognizable legal theory or by lacking sufficient facts alleged under a cognizable legal

11 theory." Woods v. U.S. Bank N.A., 831 F.3d 1159, 1162 (9th Cir. 2016). In ruling on a Rule

12 12(b)(6) motion, the Court must accept all material allegations as true and construe the complaint

13 in the light most favorable to the non-movant. Wyler Summit P'Ship v. Turner Broad. Sys., Inc.,

14 135 F.3d 658, 661 (9th Cir. 1998). The complaint "must contain sufficient factual matter,

15 accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556

16 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

17 **B.    Arbitration**

18   Classmates argues that while acting as Knapke's agent, Knapke's counsel assented to

19 Classmates' terms of service which require arbitration of the present claims. This argument lacks

20 merit.

21   Though neither party provides adequate briefing on what state's law should apply to

22 resolve this argument, the Court finds Ohio law applies. The Court so concludes because Knapke

23 resides in Ohio and Ohio law should apply to interpreting any attorney-client relationship that

24

1    she entered into from her domicile. Classmates suggests that Washington law applies because

2    that is the location of its headquarters. (Mot. at 2 n.2.) But Washington law only applies to

3    interpreting the terms of service, not the question of whether Knapke's attorney was acting as her

4    agent when he assented to the terms of service.

5         Under Ohio law "for a principal to be bound by the acts of his agent under the theory of

6    apparent agency, evidence must affirmatively show: (1) [t]hat the principal held the agent out to

7    the public as possessing sufficient authority to embrace the particular act in question, or

8    knowingly permitted him to act as having such authority, and (2) that the person dealing with the

9    agent knew of the facts and acting in good faith had reason to believe and did believe that the

10   agent possessed the necessary authority." Master Consol. Corp. v. BancOhio Natl. Bank, 61

11   Ohio St. 3d 570, 576, 575 N.E.2d 817, 822 (1991) (citation and quotation omitted). "The

12   apparent power of an agent is to be determined by the act of the principal and not by the acts of

13   the agent; a principal is responsible for the acts of an agent within his apparent authority only

14   where the principal himself by his acts or conduct has clothed the agent with the appearance of

15   the authority and not where the agent's own conduct has created the apparent authority." Id. at

16   576-77.

17        There is no evidence that Knapke gave her counsel any authority to bind her to

18   Classmates' terms of service. Knapke alleges she has never used Classmates' services and there

19   is no evidence she agreed to the terms of service. Nor is there any evidence that her counsel

20   acted at her direction. Knapke's Opposition to the Motion states that Knapke did not discuss with

21   counsel creating an account on Classmates. (Opp. at 24 (Dkt. No. 18 at 30).) And Classmates has

22   failed to provide any evidence that Classmates viewed counsel's creation of an account to have

23   been undertaken on Knapke's behalf. As Knapke points out, the terms of service themselves

24

1   forbid the creation of accounts on the behalf of others. Moreover, as counsel notes, his use of the

2   Classmates account was done to satisfy his obligations to the Court under Rule 11 to ensure an

3   adequate investigation of the claim presented. In sum, Classmates has not carried its burden to

4   show counsel bound his client when he agreed to the terms of service.

5        This outcome finds support from a similar case brought against Classmates that rejected a

6   nearly identical argument under California law. See Callahan v. PeopleConnect, Inc., 2021 WL

7   1979161, at *6-*7 (N.D. Cal. May 18, 2021). In Callahan, the court found that an attorney

8   cannot act on implied authority to impair his client's "substantial rights," which includes waiving

9   judicial review and agreeing to arbitration merely by performing some pre-suit investigation. See

10  id. at *5. The court explained that "absent client consent or ratification, a lawyer cannot bind a

11  client to an arbitration agreement by virtue of the attorney-client relationship alone." Id. at *6-*7.

12  The same is true here applying Ohio law given the lack of evidence that Knapke gave any

13  authority to counsel to create an account for her or that Classmates knew counsel was acting on

14  her behalf. See Master, 61 Ohio St. 3d at 576; (Opp. at 24 (Dkt. No. 18 at 30)).

15       Classmates misplaces its reliance on Independent Living Resource Center San Francisco

16  v. Uber Technologies, Inc., No. 18-cv-06503, 2019 WL 3430656 (N.D. Cal. July 30, 2019). In

17  that case, the central factual predicate for the claims stemmed from a paralegal's research on

18  behalf of the client using defendant's "app" that compelled arbitration of the claims. But here

19  neither Knapke nor her counsel needed to create an account to understand the basis of her claim.

20  Knapke's claim stems instead from the fact she "discovered that Classmates uses her name and

21  photo in advertisements on the Classmates website to advertise and/or actually sell Defendant's

22  products and services." (Compl. ¶ 20.) This aligns with the outcome in Callahan where

23  arbitration could not be compelled in part because counsel's investigation did "not serve as the

24

1    basis of Plaintiffs' claims – i.e., counsel's use of the Classmates.com website is not the factual

2    predicate for Plaintiffs' claims." 2021 WL 1979161, at *6. Nor is there any evidence backing

3    Classmates' speculation that counsel alone encountered Knapke's image and that "Counsel

4    created an account so his client would not have to create one herself." (Reply at 2.) The

5    Complaint plainly contradicts this guesswork. (Compl. ¶¶ 1, 20.)

6          Lastly, the Court rejects Classmates' request for discovery on this issue. In a footnote,

7    Classmates suggests that it should be entitled to discovery to learn about Knapke's knowledge

8    and acquiescence to counsel's use of the account and the identity of who took the screenshots

9    included in the Complaint. (Mot. at 5 n.3.) That information has already been provided in the

10   Opposition, rendering the requested discovery a nullity. (See Dkt. Nos. 18, 18-1.) The Court thus

11   rejects Classmates' argument that Knapke must arbitrate her claim.

12   **C.    Communications Decency Act**

13         Classmates unsuccessfully argues that it is entitled to immunity under the

14   Communications Decency Act, 47 U.S.C. § 230(c)(1).

15         To be entitled to dismissal based on this affirmative defense, Classmates must show that

16   the Complaint's allegations demonstrate that Classmates is: (1) an interactive computer service

17   provider; (2) publishing information "provided by another information content provider." 47

18   U.S.C. § 230(c)(1). The CDA defines "information content provider" as "any person or entity

19   that is responsible, in whole or in part, for the creation or development of information provided

20   through the Internet or any other interactive computer service." 47 U.S.C. § 230(c)(1). As to the

21   first element, the Ninth Circuit interprets the term "interactive computer service provider"

22   expansively. See Dyroff v. Ultimate Software Grp., Inc., 934 F.3d 1093, 1097 (9th Cir. 2019),

23   cert. denied, 140 S. Ct. 2761, 206 L. Ed. 2d 936 (2020). And as to the second element, "what

24

1   matters is whether the claims 'inherently require[ ] the court to treat the defendant as the

2   'publisher or speaker' of content provided by another.'" Id. at 1098 (quoting Barnes v. Yahoo!,

3   Inc., 570 F.3d 1096, (9th Cir. 2009)).

4        "The prototypical service qualifying for [CDA] immunity is an online messaging board

5   (or bulletin board) on which Internet subscribers post comments and respond to comments

6   posted by others." Kimzey v. Yelp! Inc., 836 F.3d 1263, 1266 (9th Cir. 2016) (internal

7   quotations omitted). "Taking the relevant statutory definitions and case law in account, it

8   becomes clear that, in general, Section 230(c)(1) 'protects websites from liability [under state or

9   local law] for material posted on the[ir] website[s] by someone else.'" Dyroff, 934 F.3d at 1097

10  (quoting Doe v. Internet Brands, Inc., 824 F.3d 846, 850 (9th Cir. 2016)). When the interactive

11  computer service provider creates the content itself it "is also a content provider" and not entitled

12  to protection under the CDA. See Fair Hous. Council of San Fernando Valley v.

13  Roommates.Com, LLC, 521 F.3d 1157, 1162 (9th Cir. 2008). In other words, the CDA's "grant

14  of immunity applies only if the interactive computer service provider is not also an information

15  content provider, which is defined as someone who is responsible, in whole or in part, for the

16  creation or development of the offending content." Id. (internal citations omitted).

17       Based on the Court's review of the Complaint, Classmates is not entitled to protection

18  under the CDA. The sole issue in this case is whether Classmates' decision to create

19  advertisements using Knapke's identity violates Ohio law. (Compl. ¶¶ 1-10.) The offending

20  content is generated by Classmates and the advertisement is not merely some passive display of

21  content created by another entity, even if it contains a picture from a school yearbook. In this

22  context, Classmates is the content creator and not entitled to immunity under the CDA. See

23  Roomates.Com, 521 F.3d at 1162.

24

1    Classmates misplaces reliance on <u>Callahan v. Ancestry.com, Inc.</u>, No. 20-CV-08437-LB,

2    2021 WL 783524, at *5 (N.D. Cal. Mar. 1, 2021) to argue that posting yearbooks online is

3    protected by the CDA. (Mot. at 6) The case is factually distinguishable because the court focused

4    on defendant's online display of yearbooks created by third parties. <u>See</u> <u>Callahan</u>, 2021 WL

5    783524, at *5. Here, the focus is on Classmates' use of a yearbook photo in stand-alone

6    advertisements it uses to lure in potential customers. That form of customized advertisement is

7    not protected under the CDA. As the Ninth Circuit recently explained "[w]hat matters . . . is

8    'whether the cause of action inherently requires the court to treat the defendant as the 'publisher

9    or speaker' of content provided by another.'" <u>Gonzalez v. Google LLC</u>, 2 F.4th 871, 891 (9th

10   Cir. 2021) (quoting <u>Barnes</u>, 570 F.3d at 1102). That cannot be said of the present matter. As

11   alleged, Classmates is the publisher of its own content, which is unprotected by the CDA.

12   The Court rejects application of the CDA as a basis to dismiss the Complaint.

13   **D.     Copyright Act**

14   The Copyright Act provides that "the owner of copyright ... has the exclusive rights to do

15   and to authorize" others to display, perform, reproduce or distribute copies of the work and to

16   prepare derivative works. 17 U.S.C. § 106. "Section 301 of the Act provides for exclusive

17   jurisdiction over rights that are equivalent to any of the exclusive rights within the general scope

18   of copyright as specified in the Act." <u>Jules Jordan Video, Inc. v. 144942 Canada Inc.</u>, 617 F.3d

19   1146, 1152 (9th Cir. 2010). The Ninth Circuit employs a two-part test to measure preemption:

20   (1) does the subject matter of the state law claim fall within the subject matter of copyright as

21   described in 17 U.S.C. §§ 102 and 103; and (2) if so, are the rights asserted under state law are

22   equivalent to the rights contained in 17 U.S.C. § 106? <u>See</u> <u>id.</u> at 1153 (quoting <u>Laws v. Sony</u>

23   <u>Music Entm't, Inc.</u>, 448 F.3d 1134, 1137-38 (9th Cir. 2006)).

24

1    As set forth in Section 102, "[c]opyright protection subsists . . . in original works of

2    authorship fixed in any tangible medium of expression, now known or later developed, from

3    which they can be perceived, reproduced, or otherwise communicated, either directly or with the

4    aid of a machine or device [and w]orks of authorship include . . . pictorial, graphic, and

5    sculptural works." 17 U.S.C. § 102. "Section 103 provides that the subject matter specified in §

6    102 also includes compilations and derivative works, 'but the copyright in a compilation or

7    derivative work extends only to the material contributed by the author of such works as

8    distinguished from the preexisting material employed in the work.'" Id. at 1003 (quoting 17

9    U.S.C. § 103).

10    A "person's name or likeness is not a work of authorship within the meaning of 17

11    U.S.C. § 102." Downing v. Abercrombie & Fitch, 265 F.3d 994, 1004 (9th Cir. 2001). This is

12    true even if the plaintiff's "names and likenesses are embodied in a copyrightable photograph."

13    Id. Thus, "a publicity-right claim is not preempted when it targets non-consensual use of one's

14    name or likeness on merchandise or in advertising." Maloney v. T3Media, Inc., 853 F.3d 1004,

15    1010 (9th Cir. 2017). "But when a likeness has been captured in a copyrighted artistic visual

16    work and the work itself is being distributed for personal use, a publicity-right claim interferes

17    with the exclusive rights of the copyright holder, and is preempted by section 301 of the

18    Copyright Act." Id.

19    Classmates has failed to satisfy the first step of the inquiry under Copyright Act

20    preemption. The non-consensual use of Knapke's name and likeness for advertising causes the

21    claim to fall outside of the Copyright Act's preemption. Knapke alleges that Classmates has

22    misused her likeness for advertisements, which are not works or authorship under Section 102 of

23    the Copyright Act. See Downing, 265 F.3d at 1004. Moreover, Knapke's Right to Publicity Law

24

1    claim seeks to prevent the commercial exploitation of her identity for a commercial purpose

2    through advertisements, which is not subject to the Copyright Act's preemption. See Maloney,

3    853 F.3d at 1010. The Court rejects this as a basis for dismissal of the Complaint.

4    **E.    Ohio Right of Publicity Law**

5            Under Ohio's Right of Publicity Law, "a person shall not use any aspect of an

6    individual's persona for a commercial purpose." Ohio Rev. Code Ann. § 2741.02 (West).

7    "Persona" is defined as "an individual's name, voice, signature, photograph, image, likeness, or

8    distinctive appearance, if any of these aspects have commercial value." Ohio Rev. Code Ann. §

9    2741.01(A) (West). "'Commercial purpose' means the use of or reference to an aspect of an

10   individual's persona . . . [f]or advertising or soliciting the purchase of products … services, or

11   other commercial activities." Ohio Rev. Code Ann. § 2741.01(B). The law grants a private right

12   of action to "individual[s] whose right of publicity is at issue" absent consent. Ohio Rev. Code

13   Ann. § 2741.06(A). "The right of publicity in the persona of an individual whose domicile or

14   residence is in this state." Ohio Rev. Code Ann. § 2741.03.

15           Knapke has stated a claim under the Right of Publicity Law. She has alleged that

16   Classmates has used her persona—name and photograph—for a commercial purpose—selling

17   Classmates' products and services. The Complaint's allegations more than satisfy these

18   elements. (See Compl. ¶¶ 1, 6-10, 20-22, 36-37.)

19           Notwithstanding the adequacy of the Complaint, Classmates makes several arguments in

20   favor of dismissal, none of which has merit. First, Classmates argues that Knapke has not alleged

21   a "use" of her persona in violation of the Law because she has not alleged that anyone else has

22   seen this same image. Classmates relies on common law claims that require some allegation that

23   members of the public saw the offending image. (See Mot. at 11 (Dkt. No. 13 at 20) (citing

24

1   Jackson v. Playboy Enters., Inc., 574 F. Supp. 10, 13 (S.D. Ohio 1983); Fox v. Nationwide Mut.

2   Ins. Co., 117 N.E.3d 121, 145 (Ohio Ct. App. 2018)).) Classmates fails to explain why this

3   element from common law false light claims should be imputed into the Right of Publicity Law.

4   While courts may look to common law claims to help understand the Right of Publicity Law,

5   none has imputed a new element into the Law from common law tort. (See Reply at 6-7 (citing

6   cases).) The Court finds no valid basis to write a new provision into the Right of Publicity Law.

7   And accepting the allegations of the Complaint as true, Knapke has alleged a "use" of her

8   image—she alleges that she discovered Classmates using her image to market its products and

9   services on the internet, which is available to the public at large. (Compl. ¶¶ 6, 10, 20-26.) This

10  satisfies her burden under the Law.

11      Second, Classmates argues Knapke fails to plead that her persona has "commercial

12  value," as required by the Right of Publicity Law. To satisfy this element, the plaintiff need only

13  plead that there is some value in associating a good or service with her identity. See Harvey v.

14  Systems Effect, LLC, 154 N.E. 3d 293, 306 (Ohio App. 2020). "While plaintiffs need not be

15  national celebrities to assert a right of publicity claim, they must at least 'demonstrate that there

16  is value in associating an item of commerce with [their] identity.'" Roe v. Amazon.com, 714 F.

17  App'x 565, 568 (6th Cir. 2017) (unpublished) (citing Landham v. Lewis Galoob Toys, Inc., 227

18  F.3d 619, 624 (6th Cir. 2000); McFarland v. Miller, 14 F.3d 912, 919-20 (3d Cir. 1994) (stating

19  that the right of publicity is worthless without association)). "The mere incidental use of a

20  person's name or likeness is not actionable in an appropriation claim." Id. (citing Vinci v. Am.

21  Can Co., 69 Ohio App.3d 727, 591 N.E.2d 793, 794 (1990) (per curiam)). Here, the use of

22  Knapke's persona is not incidental to the advertisement. Her persona is used to make the

23  advertisement, which shows its commercial value. This differs from the use of a plaintiff's

24

1    photograph as a book cover in <u>Roe</u>, which was incidental to the publication and sale of a book.

2    The Court finds Knapke has alleged a commercial value to her persona.

3            Third, Classmates argues that Knapke has not shown that the use of her persona was for

4    anything other than an informational purpose, which it claims falls outside of the Law. This

5    argument wholly ignores the allegations in the Complaint and asks the Court to consider a

6    potential defense that relies on facts outside of the Complaint. The Court rejects this

7    inappropriate attack to the Complaint

8            Fourth, Classmates argues that Knapke has not pleaded conduct that occurred in Ohio and

9    that the Right of Publicity Law can only apply in Ohio—i.e., it has no extraterritorial effect.

10   (Mot. at 10. (citing <u>Mitchell v. Abercrombie & Fitch, No</u>. C2-04-306, 2005 WL 1159412, at *3

11   (S.D. Ohio May 17, 2005)).) According to Classmates, this means Knapke must allege that the

12   violation occurred in Ohio by alleging someone in Ohio saw her identity in an advertisement.

13   (<u>Id.</u>) The Court disagrees. First, there is no express element that someone in Ohio view the

14   misappropriated likeness. Rather, it only requires that the plaintiff be domiciled in Ohio, and

15   Knapke has alleged she is an Ohio resident. <u>See</u> Ohio Rev. Code Ann. § 2741.03; Compl. ¶ 15.

16   As alleged, there is no "extraterritorial" application of the law. Second, the Complaint alleges

17   that Knapke herself discovered Classmates is using her likeness. (Compl. ¶ 20.) While the

18   Complaint does not say precisely where this occurred, Knapke is a resident of Ohio and

19   Classmates operates a website that is available to Ohioans generally. As such, the Court

20   reasonably infers that the discovery occurred in Ohio. The Court rejects this argument.

21

22

23

24

**F.      Exemptions to the Ohio Right of Publicity Law**

Classmates argues that its advertisement is exempted from the Ohio Right of Publicity Law because is a "literary work" or a matter of "public affairs." (Mot. at 15-17.) The Court is only partially convinced.

**1.      Literary Work**

First, Classmates argues that its advertisements are exempt because they advertise literary works. The Court agrees in part, though this does not merit dismissal of the claim.

The Ohio Right of Publicity Law does not apply to "[a] literary work, dramatic work, fictional work, historical work, audiovisual work, or musical work regardless of the media in which the work appears or is transmitted, other than an advertisement or commercial announcement" for such a work. Ohio Rev. Code § 2741.09(A)(1)(a), (d). Invoking the federal Copyright Act, Classmates argues that its yearbook products and services are literary works, which generally includes "works . . . expressed in words, numbers, or other verbal or numerical symbols or indicia, regardless of the nature of the material objects, such as books, periodicals, manuscripts, phonorecords, film, tapes, disks, or cards, in which they are embodied." (See Mot. at 16 (citing 17 U.S.C. § 101).)

Applying that definition, the Court agrees with Classmates that advertising yearbooks for purchase is an advertisement of a literary work and exempt from the Law. Plaintiffs offer no reasoning why the advertisements of a yearbook would not fall within this exemption, relying instead on a case applying an Illinois law that is substantively different from the Ohio Right of Publicity Law. (Opp. at 9 (citing Lukis v. Whitepages Inc., No. 19 C 4871, 2020 WL 6287369, at *1 (N.D. Ill. Oct. 27, 2020)). The Court agrees with Classmates that the advertisement for the sale of reprinted yearbooks is exempt. But Classmates also advertises a subscription service to

"'keep in touch' with other classmates." (Compl. ¶ 10.) That form of advertisement does not

advertise a literary work and is not exempt from the Law. As such, the Court finds that the claim

cannot be based on the advertisement of the sale of yearbooks, but it can attack the advertisement

of Classmates' other subscription services. On that basis, the Court finds the claim falls outside

of this exemption and may move forward.

### 2.      Public Affairs

Second, Classmates argues that its advertisements are exempt because they are matters of

public affairs. This argument fails.

The Right of Publicity Law exempts: (1) "use of an aspect of an individual's persona in

connection with any news, public affairs, sports broadcast or account"; (2) "[m]aterial that has

political or newsworthy value"; and (3) "use of an aspect of an individual's persona in

connection with the broadcast or reporting of an event or topic of general or public interest."

Ohio Rev. Code §§ 2741.02(D)(1); 2741.09(A)(1)(b), (A)(3). Under these exemptions, the "use

of a person's identity primarily for the purpose of communicating information . . . is not

generally actionable." See Harvey, 154 N.E.3d at 308 (quotation and citation omitted)

This exemption does not apply to the allegations in the Complaint, which assert that the

use of Knapke's persona to sell Classmates' subscription service is for a commercial purpose and

not to communicate news. The Court finds no merit in Classmates argument on this point.

### G.      First Amendment

Classmates argues that "where a person's name, image, or likeness is used in speech for

'informative or cultural' purposes, the First Amendment renders the use 'immune' from

liability." (Mot. at 18 (citing New Kids on the Block v. News Am. Publ'g, Inc., 745 F. Supp.

1540, 1546 (C.D. Cal. 1990), aff'd, 971 F.2d 302 (9th Cir. 1992)).) And, quoting a Sixth Circuit

1   decision, Classmates also argues that a yearbook "'serves as a forum in which student editors

2   present pictures, captions, and other written material.'" (Id. (quoting Kincaid v. Gibson, 236 F.3d

3   342, 351 (6th Cir. 2001)).) The Court construes Classmates' First Amendment challenge to be

4   limited to the specific claim Knapke makes, and not to the Right of Publicity Law generally. Had

5   Classmates sought that broader relief it would have had and has failed to provide notice to the

6   Ohio Attorney General under Rule 5.1.

7        The first question is whether the advertisement of Classmates' subscription services is

8   core First Amendment speech or commercial speech. Commercial speech is "defined as speech

9   that does no more than propose a commercial transaction." United States v. United Foods, Inc.,

10  533 U.S. 405, 409 (2001). The Supreme Court has noted that "advertising which 'links a product

11  to a current public debate' is not thereby entitled to the constitutional protection afforded

12  noncommercial speech." Bolger v. Youngs Drug Prods. Corp., 463 U.S. 60, 67–68 (1983)

13  (holding that "information pamphlets are properly characterized as commercial speech.").

14  "Where the facts present a close question, 'strong support' that the speech should be

15  characterized as commercial speech is found where the speech is an advertisement, the speech

16  refers to a particular product, and the speaker has an economic motivation." Hunt v. City of Los

17  Angeles, 638 F.3d 703, 715 (9th Cir. 2011) (citing Bolger, 463 U.S. at 66–67). But

18  "[c]ommercial speech does not retain its commercial character 'when it is inextricably

19  intertwined with otherwise fully protected speech.'" Id. (quoting Riley v. Nat'l Fed. of the Blind

20  of N. Car., Inc., 487 U.S. 781, 796 (1988)).

21        Classmates' advertisement at issue is commercial speech. The use of Knapke's image and

22  name is alleged to be done for the purpose of enticing viewers into buying or subscribing to

23  Classmates' products and services. The challenged conduct is not the offer of access to

24

1    yearbooks or even buying reprinted copies. In fact, Knapke expressly does not challenge the sale

2    of her information in the yearbooks. (Compl. ¶ 14.) Rather, she seeks to prevent the commercial

3    use of her images to sell access to yearbooks and other subscription services to connect old

4    classmates. That is commercial speech. And there is nothing showing that the Classmates-created

5    advertisement using a yearbook photo is intertwined with otherwise fully protected speech.

6            The second question is whether the Ohio Right of Public Law violates the First

7    Amendment's protections on commercial speech. "Commercial speech that is not false or

8    deceptive and does not concern unlawful activities, however, may be restricted only in the

9    service of a substantial governmental interest, and only through means that directly advance that

10   interest." Zauderer v. Off. of Disciplinary Couns. of Supreme Ct. of Ohio, 471 U.S. 626, 638

11   (1985). "The protection available for particular commercial expression turns on the nature both

12   of the expression and of the governmental interests served by its regulation." Central Hudson

13   Gas & Electric Corp. v. Public Service Comm'n, 447 U.S. 557, 563 (1980). The Court engages in

14   a multi-step analysis. "First, we determine whether the expression is constitutionally protected."

15   Bolger, 463 U.S. at 68. "For commercial speech to receive such protection, 'it at least must

16   concern lawful activity and not be misleading.'" Id. (quoting Central Hudson, 447 U.S. at 566).

17   In the context of the claim presented here, at least one court has concluded, "the informational

18   function of advertising is impaired when one wrongfully appropriates another's image for

19   commercial purposes." Bosley v. Wildwett.com, 310 F. Supp. 2d 914, 926 (N.D. Ohio 2004).

20   "Second, we ask whether the governmental interest is substantial [and i]f so, we must then

21   determine whether the regulation directly advances the government interest asserted, and

22   whether it is not more extensive than necessary to serve that interest." Id. at 68-69.

23

24

Here, Knapke has the better argument that the Ohio Right of Publicity Law comports with the First Amendment. It is questionable that the commercial speech at issue here is entitled to any protection, given that it misappropriates Knapke's persona and potentially misleads the public. See Zauderer, 471 U.S. at 638. But even if the advertisement is entitled to protection as commercial speech, the Right of Publicity Law directly and appropriately advances Ohio's substantial interest in enabling its citizens to protect the non-consensual commercial exploitation of their likeness without overbroadly prohibiting commercial speech. The court in Bosley considered this same issue in the context of the Ohio Right of Publicity Law and explained:

> Laws governing the right to publicity have a substantial interest in regulating commercial speech. Individuals have a property right in their own identity. Allowing individuals the exclusive right to capitalize on their persona, like copyright law, encourages them to invest in developing their skills and talents. The right to publicity prevents others from depleting the economic value of one's persona without internalizing the costs. Furthermore, the right to publicity helps prevent deceptive commercial uses. In turn, remedies under the law advance that governmental interest without being more extensive than necessary.

Bosley, 310 F. Supp. 2d at 929. The Court adopts this reasoning and finds that the Right of Publicity Law comports with First Amendment and Knapke's claim does not infringe upon it.

## H.  Dormant Commerce Clause

Classmates argues that Knapke's claim violates the "dormant" Commerce Clause. This argument falls short.

Implicit in the Commerce Clause (U.S. Const. art. I, sec. 8, cl. 3) is the negative or "dormant" Commerce Clause principle that the states impermissibly intrude on this federal power when they enact laws that unduly burden interstate commerce. "Although the Commerce Clause is by its text an affirmative grant of power to Congress to regulate interstate and foreign commerce, the Clause has long been recognized as a self-executing limitation on the power of the States to enact laws imposing substantial burdens on such commerce." South–Central Timber

1    Dev., Inc. v. Wunnicke, 467 U.S. 82, 87 (1984). But the Supreme Court has recognized that

2    "under our constitutional scheme the States retain broad power to legislate protection for their

3    citizens in matters of local concern such as public health" and has held that "not every exercise

4    of local power is invalid merely because it affects in some way the flow of commerce between

5    the States." Great Atl. & Pac. Tea Co. v. Cottrell, 424 U.S. 366, 371 (1976).

6         "Modern dormant Commerce Clause jurisprudence primarily 'is driven by concern about

7    economic protectionism—that is, regulatory measures designed to benefit in-state economic

8    interests by burdening out-of-state competitors.'" Dep't of Revenue v. Davis, 553 U.S. 328, 337-

9    38 (2008). "Given the purposes of the dormant Commerce Clause, it is not surprising that a state

10   regulation does not become vulnerable to invalidation under the dormant Commerce Clause

11   merely because it affects interstate commerce." Nat'l Ass'n of Optometrists & Opticians v.

12   Harris, 682 F.3d 1144, 1148 (9th Cir. 2012). "A critical requirement for proving a violation of

13   the dormant Commerce Clause is that there must be a substantial burden on interstate

14   commerce." Id. "Most regulations that run afoul of the dormant Commerce Clause do so because

15   of discrimination, but in a small number of dormant Commerce Clause cases courts also have

16   invalidated statutes that imposed other significant burdens on interstate commerce." Id.

17        Though difficult to apply, courts still employ a balancing test enunciated by the Supreme

18   Court in Pike v. Bruce Church, Inc., 397 U.S. 137 (1970). "Where [a state] statute regulates

19   even-handedly to effectuate a legitimate local public interest, and its effects on interstate

20   commerce are only incidental, it will be upheld unless the burden imposed on such commerce is

21   clearly excessive in relation to the putative local benefits." Pike, 397 U.S. at 142. "If a legitimate

22   local purpose is found, then the question becomes one of degree . . . . [a]nd the extent of the

23   burden that will be tolerated will of course depend on the nature of the local interest involved,

24

1    and on whether it could be promoted as well with a lesser impact on interstate activities." Id. "If

2    a regulation merely has an effect on interstate commerce, but does not impose a significant

3    burden on interstate commerce, it follows that there cannot be a burden on interstate commerce

4    that is 'clearly excessive in relation to the putative local benefits' under Pike." Harris, 682 F.3d

5    at 1155.

6           Classmates fails to offer any convincing rationale why the burden imposed on its

7    interstate business is clearly excessive in light of Ohio's desire to prevent non-consensual

8    commercial use of Ohioans' personas. The burden on Classmates itself is incidental to the Right

9    of Publicity Law's attempt to protect Ohioan's property interest in their own persona. This

10   protective measure serves the core, individual rights of Ohioans and Classmates provides no

11   evidence the law was designed as an economic barrier to favor Ohio economic interests. Nor has

12   Classmates shown that there is some less burdensome approach that could satisfy Ohio's

13   interests as to publicity rights. And it is worth noting that Classmates has availed itself of the

14   benefits of doing business in Ohio by acquiring Ohio yearbooks expressly for the purpose of

15   marketing access to them and related services to—by and large—Ohioans. And given the nature

16   of the offending advertisement at issue—which Classmates created—it would appear that

17   Classmates has the ability to simply alter the way in which it advertises its services to avoid the

18   nonconsensual use of Ohioans' personas. There is no evidence of a significant burden and the

19   Court rejects this argument.

20                                    **CONCLUSION**

21          Classmates' raises a substantial number of arguments in its efforts to obtain dismissal of

22   Knapke's complaint. These arguments all fall short of the mark. Knapke has adequately pleaded

23

24

ORDER DENYING MOTION TO DISMISS - 19

her claim that Classmates' use of her persona to advertise its subscription services violates the

Ohio Right of Publicity Law. As such, the Court DENIES the Motion.

The clerk is ordered to provide copies of this order to all counsel.

Dated August 10, 2021.

Marsha J. Pechman
United States Senior District Judge