The Honorable Marsha J. Pechman

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

BARBARA KNAPKE, individually and on behalf of all other similarly situated,

Plaintiff,

v.

PEOPLECONNECT, INC., a Delaware Corporation,

Defendant.

Case No. 2:21-cv-00262-MJP

DEFENDANT PEOPLECONNECT, INC.'S MOTION TO STAY PROCEEDINGS PENDING APPEAL OF THE COURT'S DECISION TO DENY DEFENDANT'S MOTION TO COMPEL ARBITRATION

Note on Motion Calendar: September 17, 2021

ORAL ARGUMENT REQUESTED

JENNER & BLOCK LLP
633 WEST 5TH STREET
LOS ANGELES, CA 90071
TELEPHONE: 213 239-5100

## INTRODUCTION

Defendant PeopleConnect, Inc. ("PeopleConnect") respectfully submits this motion to stay proceedings pending PeopleConnect's appeal of this Court's August 10, 2021 decision denying PeopleConnect's motion to compel arbitration. Dkt. 25, Order Denying Mot. to Dismiss ("Order"). Plaintiff's attorney—who it is undisputed is Plaintiff's agent—agreed to arbitrate any disputes related to the Classmates.com website. Plaintiff wants to avoid that agreement. Though this Court decided that Plaintiff could not be bound by the assent of her attorney-agent, PeopleConnect has appealed that decision to the Ninth Circuit. The cases in this district instruct that this litigation be stayed pending appeal of that denial of arbitration under all of the relevant factors.

*First*, PeopleConnect can make a strong showing of a likelihood of prevailing on appeal. While the Order addresses an agent's apparent authority to enter into a contract, it does not address whether an attorney-agent has *actual* authority to do so. The Order relies on *Callahan v. PeopleConnect, Inc.*, No. 20-cv-09203, 2021 WL 1979161, at *6–7 (N.D. Cal. May 18, 2021) [hereinafter "*Callahan*"], a decision premised on another state's law that is already on appeal to the Ninth Circuit. The Order also conflicts with *Independent Living Resource Center San Francisco v. Uber Technologies, Inc.*, 18-cv-06503, 2019 WL 3430656 (N.D. Cal. July 30, 2019) [hereinafter "*Uber*"]. The Ninth Circuit may well find that *Uber* was rightly decided. Even if this Court believes that the Order is correct and will be affirmed, PeopleConnect's appeal presents an important and recurring serious legal issue the Ninth Circuit has never addressed, which in and of itself warrants a stay.

*Second*, PeopleConnect will be harmed without a stay in several ways that this district has held constitutes irreparable harm, including that there is the risk that the arbitration of Plaintiff's individual claim will become moot and instead PeopleConnect will unnecessarily have to litigate a class action in a public court even though it and Plaintiff agreed they would arbitrate their dispute. Also, without the stay, PeopleConnect will be forced to engage in costly discovery when the arbitration the parties agreed to is designed to be cost-limiting

*Third*, there is no credible argument that Plaintiff would be harmed by a stay. Plaintiff does not face any continuing harm because PeopleConnect has already suppressed her images on

Classmates.com. Also, there is no imminent risk that evidence will be lost, as PeopleConnect has a litigation hold in place to preserve relevant evidence.

*Fourth*, the public interest favors a stay. Federal policy regarding arbitration favors staying this case so long as this case could potentially be adjudicated before an arbitrator.

In sum, this case presents strong reasons for the Court to defer litigation in this matter until the Ninth Circuit has decided the appeal. PeopleConnect thus respectfully requests that the Court stay this case pending the resolution of its appeal.

## ARGUMENT

Courts in the Ninth Circuit are not required to grant stays pending appeal of a denial of a motion to compel arbitration. *See Britton v. Co-op Banking Grp.*, 916 F.2d 1405, 1411–12 (9th Cir. 1990); *see Benson v. Double Down Interactive, LLC*, No. 18-cv-00525, 2019 WL 972482, at *1 & n.1 (W.D. Wash. Feb. 28, 2019) (noting split over whether stays are mandatory). But they have the discretion to grant stays pending such appeals after considering the usual criteria for a stay: (1) likelihood of success on the merits, (2) irreparable harm, (3) harm to other interested parties, and (4) the public interest. *Lowden v. T-Mobile USA, Inc.,* No. C05-1482P, 2006 WL 1896678, at *1 (W.D. Wash. July 10, 2006). These factors are evaluated on a "continuum," the "extremes" of which arise if there is either "a probability of success on the merits and the possibility of irreparable injury" or the appeal raises "serious legal questions … and the balance of hardships tips sharply in petitioner's favor." *Leiva-Perez v. Holder*, 640 F.3d 962, 964 (9th Cir. 2011) (citation omitted).

## I.    PeopleConnect Is Likely To Succeed On The Merits Of Its Appeal.

To support a stay, a moving party need not prove it is more likely than not it will succeed on appeal. *Leiva-Perez,* 640 F.3d at 966–67. Rather, the moving party may either "(1) show[] a probability of success on the merits and the possibility of irreparable injury; or (2) demonstrate[e] that serious legal questions are raised and that the balance of hardships tips sharply in its favor. *Lowden*, 2006 WL 1896678, at *1.

### A.    PeopleConnect Can Make A "Strong Showing" On The Merits.

The basic elements of this case are not disputed. Plaintiff's attorney is her agent. Plaintiff's

MOTION TO STAY PENDING APPEAL – 2
2:21-cv-00262-MJP

attorney registered the Classmates.com account used to create screenshots that are in the Complaint and constitute the basis of Plaintiff's claim. Counsel agreed to the arbitration provision in the terms of service ("TOS") while acting within the scope of his representation of Plaintiff. He never opted out of that agreement.[1] Plaintiff benefited from her counsel's assent to the TOS by accessing the website and including screenshots in the Complaint—screenshots that only existed because her attorney-agent entered into an agreement with PeopleConnect (which included an arbitration clause). Under ordinary principles of agency law, that should be enough for Plaintiff to be bound by her counsel's assent to the TOS.

This Court, of course, views the issue differently. In denying PeopleConnect's motion to compel arbitration, the Court held that attorney-agents do not have authority to bind their clients to arbitration provisions without client consent. *See* Order at 4 (noting there was "no evidence that Knapke gave her counsel any authority to bind her to Classmates' terms of service").[2] The Court relies on *Master Consolidated Corp. v. BancOhio National Bank*, 61 Ohio St. 3d 570 (Ohio 1991), which describes the elements to show *apparent* authority in a general agency relationship. Order at 4. But *Master Consolidated Corp.* does not address whether a plaintiff's attorney-agent had *actual* authority to enter into the arbitration agreement as part of his authority to pursue plaintiff's claim, or if plaintiff impliedly ratified her attorney-agent's action by allowing him to file the complaint and failing to take immediate action to repudiate his actions.

With respect to whether Plaintiff's attorney-agent had *actual* authority to agree to the arbitration agreement if he was engaged to draft and file the Complaint on Plaintiff's behalf, under both Washington and Ohio law, an agent can take all usual and necessary acts associated with the authorized conduct. *Hoglund v. Meeks*, 170 P.3d 37, 44 (Wash. Ct. App. 2007); *Kaplan Trucking Co. v. Grizzly Falls Inc.*, 86 N.E.3d 845, 853 (Ohio Ct. App. 2017). In Plaintiff's opposition to the

---

[1] Under the TOS, Plaintiff's attorney-agent could have opted out of the arbitration agreement within 30 days of registering for his account. Dkt. 13-1, Decl. of T. McGuane, Ex. 1, § 13(D).

[2] Although the Court applied Ohio law, Order at 3–4, Plaintiff has not identified, and PeopleConnect is not aware of, a conflict between Ohio and Washington law. That matters because "[i]f there is no actual conflict, the local law of the forum applies and the court does not reach the most significant relationship test." *Woodward v. Taylor*, 366 P.3d 432, 435 (Wash. 2016) (*en banc*); *see* Dkt. 19, Def's Reply in Support of Mot. to Dismiss at 2 & n.4 (arguing there is no conflict between Washington and Ohio law).

MOTION TO STAY PENDING APPEAL – 3
2:21-cv-00262-MJP

JENNER & BLOCK LLP
633 WEST 5TH STREET
LOS ANGELES, CA 90071
TELEPHONE: 213 239-5100

request for dismissal, Plaintiff all but conceded her counsel's use of Classmates.com was necessary to her ability to file this lawsuit. Dkt. 18, Pl.'s Opp'n to Def.'s Mot. to Dismiss at 23. Plaintiff does not dispute that she gave her attorney-agent authority to file the Complaint on her behalf, which included the usual and necessary action of visiting Classmates.com to create the screenshots included in the Complaint. *Hoglund,* 170 P.3d at 44; *Kaplan,* 86 N.E.3d at 853.

As to whether Plaintiff impliedly ratified her attorney-agent's conduct, under both Washington and Ohio law, a plaintiff can impliedly ratify her attorney-agent's conduct by: (1) accepting and retaining the benefit of the contract; (2) acquiescing to it; or (3) failing to repudiate within a reasonable period of time. *Barnes v. Treece*, 15 Wash. App. 437, 443 (Wash. Ct. App. 1976); *Campbell v. Hosp. Motor Inns, Inc.,* 24 Ohio St. 3d 54, 57 (Ohio 1986). That is what happened here. Plaintiff accepted the benefit of the Complaint filed on her behalf and did not take immediate actions to repudiate her attorney-agent's actions.

The Court also relies heavily on *Callahan,* a case which has already been docketed in the Ninth Circuit. Order at 5. *Callahan* is inapplicable here because it interprets California law, which does not govern this dispute. *See Callahan,* 2021 WL 1979161, at *4. Further, the court in *Callahan* relied heavily on *Blanton v. Womancare, Inc.*, 38 Cal. 3d 396, (Cal. 1985), and it is not at all clear that *Blanton* can bear the weight the court in *Callahan* placed on it. In *Blanton*, the plaintiff's counsel agreed to binding arbitration "contrary to [his client's] express instructions." 38 Cal. 3d at 399. Here, as in *Callahan*, there is nothing to suggest that Plaintiff instructed her counsel *not* to agree to arbitration. Her failure to repudiate the agreement suggests the opposite is true. And, indeed, the court in *Callahan* previously has found such a distinction persuasive. *See Kanbar v. O'Melveny & Myers*, 849 F. Supp. 2d 902, 912–13, 912 n.2 (N.D. Cal. 2011) (decision by *Callahan* judge distinguishing *Blanton* where there was "nothing to indicate that . . . [the plaintiff] instructed her attorneys not to agree to arbitration").

In addition, in *Blanton*, Blanton's lawyer agreed that the defendant's attorney could have exclusive right to select a member of the defense bar as the sole arbitrator and that any damages would be limited to $15,000; it is unlikely that any plaintiff would have agreed to such onerous terms. *Blanton*, 38 Cal. 3d at 400. When Blanton realized what her attorney had agreed to, she

JENNER & BLOCK LLP
633 WEST 5TH STREET
LOS ANGELES, CA 90071
TELEPHONE: 213 239-5100

1    immediately repudiated the agreement and fired the attorney. *Id.* at 400, 402. This was a far cry

2    from the circumstances at issue in *Callahan*, as well as those that exist in this case. There are no

3    such one-sided provisions in the Classmates TOS, and Plaintiff did not repudiate what her counsel

4    had done; instead, she sought to benefit from her counsel's agreement by allowing her counsel to

5    create her claim and incorporated the fruits of her counsel's access to Classmates.com into her

6    Complaint. In summary, the *Callahan* court's application of *Blanton* conflicts directly with *Uber*

7    and the weight of California law. *See also Hui Ma v. Golden State Renaissance Ventures, LLC,*

8    No. 21-cv-00856, 2021 WL 2190912, at *4–5 (N.D. Cal. May 31, 2021) (applying *Uber* and

9    finding that an attorney bound his client to arbitrate). It also is inconsistent with controlling

10   Washington state and Ohio law.

11   **B.    PeopleConnect's Appeal Presents Serious Legal Questions.**

12   This Court surely disagrees with the above arguments, as set out in its decision on the

13   motion to dismiss. But it must agree that the question PeopleConnect's appeal presents—whether

14   under Washington (or Ohio) law an attorney has actual authority to bind his client to an arbitration

15   agreement where doing so is within the scope of an authorized act —plainly qualifies as a serious

16   legal question. "[C]ourts have found that a question is serious when it raises an issue of first

17   impression within the Ninth Circuit or involves a split in legal authority." *Wilson v. Huuuge, Inc.*,

18   No. 18-cv-05276, 2019 WL 998319, at *2, *5 (W.D. Wash. Mar. 1, 2019) (granting motion to

19   stay). Courts thus may find the serious question factor satisfied "if the relevant authority does not

20   squarely address the specific issue." *Id.* at *3. Courts in this district have also recognized that

21   "[i]ssues relating to the formation of a contract containing an arbitration clause can present serious

22   legal questions." *Benson*, 2019 WL 972482, at *2.

23   By that standard, the question at issue in PeopleConnect's appeal is a serious one. For one

24   thing, while several district courts have addressed the issue under California law, Plaintiffs have

25   not cited and PeopleConnect is aware of no cases that discuss whether, under Washington or Ohio

26   law, an attorney-agent can bind his client to an arbitration agreement. And the Ninth Circuit has

27   not addressed this issue under California, Washington, or Ohio law. Lack of Ninth Circuit authority

28   is an indicator of a serious legal question. *See id.* at *2–3 (finding a serious legal question existed

MOTION TO STAY PENDING APPEAL – 5
2:21-cv-00262-MJP

1    because "there is no clear precedent by the Ninth Circuit or the Supreme Court squarely addressing

2    the issue."). For another, the Order in this case conflicts with another district court decision on

3    virtually identical facts in *Uber*, as well as the decision in *Hui Ma*. 2021 WL 2190912, at *5.

4    Although these decisions were under California law, this Court relied heavily on *Callahan*, which

5    also applied California law. An issue that already has divided district courts in this Circuit and that

6    will often recur as attorneys investigate potential cases involving websites with TOS that include

7    arbitration provisions. This web of inconsistent decisions on the well-debated subject of arbitration

8    clause enforcement, in a case involving a technology company, surely qualifies as "novel" issue

9    that the Ninth Circuit should decide. *Wilson*, 2019 WL 998319, at *3. PeopleConnect's appeal thus

10   at least raises "serious legal question[s]" supporting a stay. *Id.*

11   **II.    PeopleConnect Will Suffer Irreparable Harm If The Case Proceeds.**

12          Because PeopleConnect has "a probability of success on the merits," it need only show

13   "the possibility of irreparable injury." *Leiva-Perez*, 640 F.3d at 964 (citation omitted). And, even

14   if the Court finds that PeopleConnect's appeal raises only a "serious legal question[]," it still is the

15   case that "the balance of hardships tips sharply in [PeopleConnect]'s favor." *Id.*

16          *First*, PeopleConnect will suffer an irreparable harm if the case proceeds because it would

17   be forced to proceed in a class action litigation in a public court as opposed to an individual claim

18   in a private arbitration. Courts in this district have recognized that "defendants face a particular

19   risk of irreparable harm when they have appealed an order refusing to compel arbitration of a

20   potential class action. . . . because of the risk of arbitration becoming moot and the possibility of

21   having to litigate a class action." *Wilson*, 2019 WL 998319, at *4. Allowing a class action litigation

22   to move forward would render the arbitration agreement "moot." PeopleConnect will suffer an

23   irreparable injury if it is forced to litigate a class action lawsuit that belongs, as an individual claim,

24   in arbitration.[3]

25          *Second*, PeopleConnect will suffer irreparable harm because it will be "deprived of the

26   inexpensive and expeditious means by which the parties had agreed to resolve their disputes."

27

28   ---
     [3] If the Ninth Circuit compels Plaintiff to arbitrate her claim against PeopleConnect, PeopleConnect will enforce its class action waiver. *See* Dkt. 13-1, Decl. of T. McGuane, Ex. 1, § 13.

MOTION TO STAY PENDING APPEAL – 6
2:21-cv-00262-MJP

*Benson,* 2019 WL 972482, at *3 (citation omitted). This includes forcing PeopleConnect to participate in expensive federal court discovery. As this Court has held: "[L]itigation expenses … would defeat the cost-limiting purpose of [] arbitration agreements" and "constitute a significant hardship" to the defendant. *Lowden,* 2006 WL 1896678, at *2. This is particularly true when the discovery is for a class action lawsuit. *B.F. v. Amazon.com Inc.*, No. C19-910, 2020 WL 3548010, at *4 (W.D. Wash. May 15, 2020), *report and recommendation adopted sub nom. B.F. v. Amazon*, No. C19-910, 2020 WL 3542653 (W.D. Wash. June 30, 2020).

Further, the discovery that is available in arbitration of this matter is not as broad as discovery permitted in court. The parties' arbitration agreement is governed by the Consumer Arbitration Rules of the American Arbitration Association ("AAA"), Dkt. 13-1, Decl. T. McGuane, Ex. 1, § 13(B)(i), which provide for very limited discovery, *see* AAA Consumer R. R-22(a), (c). The arbitrator may only allow "specific documents and other information [including identities of witnesses] to be shared between the consumer and business," and only if doing so would allow the arbitration to "remain a fast and economical process." *Id.* R. R-22(a). No other exchanges are authorized. *Id.* R. R-22(c). And, unlike in traditional civil discovery, any information exchanges require the permission of the arbitrator. *Id.* R. R-22(a).

If this case were allowed to proceed, "the advantages of arbitration—speed and economy—[would be] lost forever." *B.F*, 2020 WL 3548010, at *3 (quoting *Alascom, Inc. v. ITT N. Elec. Co.*, 727 F.2d 1419, 1422 (9th Cir. 1984)).

## III.   Plaintiff Will Not Suffer Any Harm If This Case Is Stayed Pending Appeal.

Plaintiff will not be harmed by an issuance of a stay. In determining potential harm to the plaintiff, "[c]ourts balance the harm to the parties." *Benson,* 2019 WL 972482, at *4. Here, while PeopleConnect will suffer irreparable harm without a stay, Plaintiff cannot show she will suffer *any* specific harm beyond the harm inherent in delay from a stay.

PeopleConnect already has suppressed Plaintiff's image from the Classmates.com website so there is no risk of continuing harm. Declaration of Lynne Gross. PeopleConnect also has a litigation hold in place so there is no risk of lost evidence. Moreover, there is no reason to believe that potential witnesses might become unavailable. *See Rajagopalan v. Noteworld, LLC*, No. C11-

1    5574, 2012 WL 2115482, at *4 (W.D. Wash. June 11, 2012) (finding plaintiff had not shown an

2    actual risk of potential lost witnesses or evidence).

3        Further, the risk of prejudice to a plaintiff is lower when the plaintiff is seeking monetary

4    damages, as "monetary damages sought by the plaintiffs [are] not as significant as the harm that

5    defendants would suffer by having to proceed with litigation while their appeal was pending."

6    *Wilson*, 2019 WL 998319, at *4.

7    **IV.    A Stay Of Proceedings Pending Appeal Is In The Public Interest.**

8        The public interest factor weighs in favor of a stay. *First,* a stay is in the public interest

9    because it "does not make sense for this Court to expend its time and energy preparing this case

10   for trial and possibly trying it only to learn at a later date from the court of appeals that it was not

11   the proper forum to hear the case." *Lowden*, 2006 WL 1896678, at *2; *see also, e.g., Benson*, 2019

12   WL 972482, at *4 (noting a stay would serve "judicial economy"); *Sample v. Brookdale Senior*

13   *Living Cmtys.*, *Inc*., No. C11-5844, 2012 WL 195175, at *2 (W.D. Wash. Jan. 23, 2012)

14   (explaining that motions to stay "take place against a backdrop of policies encouraging arbitration

15   and the preservation and integrity of judicial resources").

16       *Second*, a stay of proceedings is in the public interest because a stay supports the "clear

17   federal policy in favor of arbitration" that the Federal Arbitration Act embodies. *Simula, Inc. v.*

18   *Autoliv, Inc.,* 175 F.3d 716, 719 (9th Cir. 1999). That interest outweighs any interest in litigating

19   Plaintiffs' state-law claims in federal court when the parties may have agreed to arbitrate claims.

20   *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25 (1983). The broader

21   federal *interest* in arbitration exists, even if the parties dispute arbitrability. *See id.* at 24 (requiring

22   "a healthy regard for the federal policy favoring arbitration").

23       The public interest thus supports a stay because "issuing a stay avoids wasting judicial

24   resources and is in keeping with the federal policy favoring arbitration." *Benson*, 2019 WL 972482,

25   at *4.

26

27

28

JENNER & BLOCK LLP
633 WEST 5TH STREET
LOS ANGELES, CA 90071
TELEPHONE: 213 239-5100

1

## CONCLUSION

2     For the foregoing reasons, the Court should stay proceedings in this case pending appeal

3 of its decision denying PeopleConnect's motion to compel arbitration.

4

5 Dated this 20th day of August, 2021.

6

7                                    JENNER & BLOCK LLP

8                                     /s/ Brent Caslin
                                     Brent Caslin, Washington State Bar No. 36145
9                                    bcaslin@jenner.com
                                     633 West 5th Street, Suite 3600
10                                   Los Angeles, California 90071-2054
                                     Telephone:  213 239-5100
11

12                                   Attorney for Defendant PeopleConnect, Inc.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MOTION TO STAY PENDING APPEAL – 9
2:21-cv-00262-MJP

JENNER & BLOCK LLP
633 WEST 5TH STREET
LOS ANGELES, CA 90071
TELEPHONE: 213 239-5100

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on the date given below, I caused the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF which sent notification of such filing to the e-mail addresses denoted on the Electronic Mail Notice List.

DATED this 20th day of August, 2021.

*/s/ Brent Caslin*
Brent Caslin

MOTION TO STAY PENDING APPEAL
2:21-cv-00262-MJP

JENNER & BLOCK LLP
633 WEST 5TH STREET
LOS ANGELES, CA 90071
TELEPHONE: 213 239-5100