UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BARBARA KNAPKE,<br><br>               Plaintiff,<br><br>    v.<br><br>PEOPLECONNECT INC,<br><br>               Defendant. | CASE NO. C21-262 MJP<br><br>ORDER DENYING MOTION TO STAY |

This matter comes before the Court on Defendant's Motion to Stay. (Dkt. No. 28.) Having reviewed the Motion, Plaintiff's Opposition (Dkt. No. 34), the Reply (Dkt. No. 36), and all supporting materials, the Court DENIES the Motion.

**BACKGROUND**

The Court denied PeopleConnect Inc.'s (Classmates) motion to dismiss, finding, in part, that Plaintiff was not bound by Classmates terms of service that might require arbitration. (Dkt. No. 25.) The Court rejected Classmates' strained theory that Plaintiff's counsel's pre-suit investigation to confirm the accuracy of the allegations as required by Rule 11 bound his client to

ORDER DENYING MOTION TO STAY - 1

Classmates' terms of service. The Court found no evidence of actual or apparent authority that might bind Plaintiff to her counsel's agreement to Classmates' terms of service under Ohio law. Classmates has now appealed that portion of the Court's Order and asks the Court to stay the proceedings until the Ninth Circuit resolves the appeal.

**ANALYSIS**

Whether to grant a stay pending an appeal of an order denying a motion to compel arbitration rests within the sound discretion of the trial court. See Nken v. Holder, 556 U.S. 418, 433 (2009); Britton v. Co-op Banking Group, 916 F.2d 1405, 1412 (9th Cir. 1990). The party seeking the stay bears the burden to justify the request. See Nken, 556 U.S. at 433. In weighing such a request, courts considers: "'(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'" Leiva-Perez v. Eric H. Holder, 640 F.3d 962, 964 (9th Cir. 2011) (quoting Nken, 556 U.S. at 426 (citation omitted)). "The first two factors . . . are the most critical." Nken, 557 U.S. at 434. The Court evaluates these factors on a "continuum," and the party seeking the stay "must show that irreparable harm is probable and either: (a) a strong likelihood of success on the merits and that the public interest does not weigh heavily against a stay; or (b) a substantial case on the merits and that the balance of hardships tips sharply in the petitioner's favor." Leiva-Perez, 640 F.3d at 970.

**A.    Likelihood of Success**

Classmates argues that the Court erred in its finding that Classmates failed to show that counsel acted with any actual or apparent authority to bind his client to the terms of service. The Court stands by its analysis and sees no likelihood of success on appeal.

1    In its Motion to Stay, Classmates insinuates that the Court did not consider its argument
2    that Plaintiff gave counsel actual authority to act on her behalf. But the Court rejected that
3    argument finding that there was no evidence that could sustain such a claim. (Dkt. No. 25 at 4
4    ("There is no evidence that Knapke gave her counsel any authority to bind her to Classmates'
5    terms of service.").)
6    Additionally, Classmates newly argues that Plaintiff ratified her counsel's use of
7    Classmates' website, which binds her to the arbitration provision in the terms of service. But this
8    argument was not made in the motion to dismiss, and the Ninth Circuit generally does not
9    consider arguments that a party fails to raise before the district court. See In re Mortg. Electronic
10   Registration System, Inc., 754 F.3d 772, 780 (9th Cir. 2014) ("Generally, arguments not raised in
11   the district court will not be considered for the first time on appeal."). The Court finds this novel
12   argument likely to be rejected by the Ninth Circuit and therefore unlikely to succeed.
13   Lastly, Classmates argues that the Court improperly "relied" on a case that is pending in
14   the Ninth Circuit—Callahan v. PeopleConnect, Inc., No. 20-cv-09203, 2021 WL 1979161, at
15   *6–7 (N.D. Cal. May 18, 2021). But the Court merely cited to this nonbinding and unpublished
16   decision to highlight another district court's rejection of a similar argument (albeit under
17   California law). (Dkt. No. 25 at 5 (noting that the outcome on the arbitration argument "finds
18   support" in the outcome in Callahan). The Court did not rely on this case, which is itself not
19   authority, to reach its decision. This argument evidences no likelihood of success on the merits.

**B.    Serious Legal Questions**

21   Classmates argues that even if the Court finds no likelihood of success, there are
22   nonetheless serious legal questions that should be resolved by the Ninth Circuit before this case
23   proceeds. Classmates frames the legal question presented on appeal as "whether under

Washington (or Ohio) law an attorney has actual authority to bind his client to an arbitration agreement where doing so is within the scope of an authorized act." (Mot. at 6.) The Court does not find that this presents a serious legal question.

As Classmates argues, there are two ways to find a serious legal question. First, a serious legal question can exist where the matter presents a novel issue of first impression. See Britton, 916 F.2d at 1412. Second, a "split in legal authority" can serve to show a serious legal question. See Wilson v. Huuuge, Inc., No. 3:18-CV-05276-RBL, 2019 WL 998319, at *2 (W.D. Wash. Mar. 1, 2019). Classmates also argues that "'[i]ssues relating to the formation of a contract containing an arbitration clause can present serious legal questions.'" (Mot. at 6 (quoting Benson v. Double Down Interactive, LLC, No. 2:18-CV-00525-RBL, 2019 WL 972482, at *2 (W.D. Wash. Feb. 28, 2019)).)

The question Classmates frames on appeal does not present a novel issue of first impression. At its core, the question asks whether an attorney may have the authority as an agent to bind his client. That question can easily be resolved under Ohio's and Washington's well-established agency law. See Master Consol. Corp. v. BancOhio Natl. Bank, 61 Ohio St. 3d 570 (1991); Larson v. Bear, 38 Wn.2d 485, 489-90 (1951). Indeed, Classmates relied on a swath of Washington appellate caselaw to present its argument that an attorney can bind his client to an arbitration agreement. (See Mot. to Dismiss at 3-4.) Nor does the argument raise a unique question of contract formation through novel technology, as was at issue in Wilson and Benson on which Classmates principally relies. In Wilson, the novel issue was whether "assent to terms via a mobile app and the repetitive use of that app gives rise to actual or constructive notice." Wilson, 2019 WL 998319, at *3. And in Benson, the novel issue was "repetitive use of an app can give rise to actual or constructive notice." Benson, 2019 WL 972482, at *3. But no such

novel issue is presented about contract formation given that there was no dispute presented that counsel accepted the terms of service. The only dispute is whether he bound his client, which can be determined using the guidance of well-established case law on the principal of agency. This does not show a novel issue that could present a serious legal question.

Classmates has also failed to identify a split of authority on this issue. Classmates tries to manufacture a conflict by suggesting that the Court's decision (and that in Callahan) cannot be squared with the outcome in Independent Living Resource Center San Francisco v. Uber Technologies, Inc., No. 18-cv-06503, 2019 WL 3430656 (N.D. Cal. July 30, 2019) and Hui Ma v. Golden State Renaissance Ventures, LLC, No. 21-cv-00856, 2021 WL 2190912, at *4–5 (N.D. Cal. May 31, 2021). (See Mot. at 5-6.) But as the Court already explained, Uber presented a factually unique scenario (where the central factual predicate for the claims arose from the research of a paralegal who was bound by Uber's terms of service) that proved unhelpful in resolving the argument Classmates made. And because Uber and Hui Ma, which Classmates only cited in its reply to the motion to dismiss, apply California law they simply do not guide the analysis here under Ohio or Washington law. The Court does not believe the cases Classmates identify represent a "split" in authority that might raise a serious legal question.

The Court finds no basis on which to find that Classmates' question on appeal presents a serious legal issue that might warrant a stay of the proceedings.

**C.    Probable Irreparable Harm**

In support of its mandatory showing of irreparable harm, Classmates argues that it will suffer an irreparable harm if it has to defend against a class action that the Ninth Circuit may later determine must be arbitrated on an individual basis.

ORDER DENYING MOTION TO STAY - 5

1    In general, "[t]he impending cost of litigation is not considered an irreparable harm."
2  Wilson, 2019 WL 998319, at *4. But a party who seeks to compel arbitration of claims could
3  show a "significant hardship" if it might be forced to defend against claims the Ninth Circuit
4  later determines should be arbitrated. Lowden v. T-Mobile USA, Inc., No. C05-1482P, 2006 WL
5  1896678, at *2 (W.D. Wash. July 10, 2006).

   Classmates has advanced a colorable claim of possible irreparable harm premised on the
theory that defending against class claims that may have to arbitrated on an individual basis
poses an irreparable harm. While this evidence of harm remains attenuated and runs against the
general principal that litigation costs are not evidence of irreparable harm, the Court considers it
as evidence of irreparable harm in its analysis of the request for a stay.

**D.    Balance of Harms**

The balance of harms does not point decisively towards either party.

Classmates argues that it faces serious harm because it might be forced to unnecessarily litigate class-wide claims in a public forum rather than in a private arbitration with limited discovery. (Mot. at 7-8.) In contrast, Plaintiff argues that Classmates may continue to use her likeness to advertise in violation of her rights under Ohio law. While Classmates has undercut this argument by apparently agreeing not to use her likeness, Plaintiff argues that there are no "assurances" this will always be the case. And the Court is not aware of any agreement from Classmates not to use the likeness of any Ohioans pending this litigation. Plaintiff also argues that evidence might be lost if the case is stayed, to which Classmates points out that there is a rigorous litigation hold in place to preserve evidence.

The relative harms in the presence or absence of a stay do not greatly favor one party or the other. One the one hand, the harms Classmates identify are mostly financial. In either forum,

Classmates will incur the cost of defending against Plaintiff's claims. But the costs of defending against class claims would likely far exceed those in an individual arbitration with limited discovery. That said, the Court is not convinced that the public nature of this forum presents a harm to Classmates, which will be given every opportunity to publicly defend and explain the merit of its practices. On the other hand, the Court agrees with Plaintiff that a delay in obtaining an order or award enjoining Classmates from using her likeness presents an ongoing harm. Classmates' agreement not to use her likeness during the pendency of this case vitiates somewhat against this harm, but Classmates' agreement does not carry the same weight as a court order. And Classmates' agreement does not apparently reach the proposed class, whose harms the Court considers—just as it considers the potential that Classmates will have to defend against class claims. That said, the Court is not convinced that there will be any loss of evidence given the litigation hold. And Plaintiff has not identified any testimony from witnesses whose memory might fade during the pendency of a stay. Having considered the harms both parties identify, the Court finds this factor to be neutral.

**E.      Stay in the Public Interest**

The parties both present reasonable arguments as to why a stay or not is in the public interest. Classmates argues that a stay serves the public because it will conserve judicial resources and ensure that valid agreements to arbitrate claims are enforced. Plaintiff argues that Ohio has a strong public interest in making sure that its citizens' right to publicity is protected and that this interest would be undermined by a stay. The Court here finds that these competing public interests favor Plaintiff, given that her lawsuit seeks to vindicate both her individual right to publicity and the rights of similarly situated Ohioans. The right to publicity at issue in this case presents a more substantial public interest than concerns over judicial economy or the policy

favoring arbitration (particularly where there is a substantial dispute over the applicability of the arbitration requirement).

* * *

Considering the Nken factors, the Court finds no basis on which to grant the requested stay. While Classmates has identified possible irreparable harm, it has failed to show any likelihood of success on the merits or a serious legal question to be resolved on appeal. This is fatal to the motion. Nken, 557 U.S. at 434; Leiva-Perez, 640 F.3d at 970. And even if it had demonstrated a likelihood of success or serious legal question, Classmates has not shown that the public interest weighs heavily in favor a stay or that the balance of hardships tips sharply in its favor. See Leiva-Perez, 640 F.3d at 970. Considering the Nken factors on a "continuum," the Court finds that a stay is unwarranted on this record.

## CONCLUSION

Classmates fails to demonstrate the necessity of a stay of the proceedings pending its appeal of the Court's order on its motion to dismiss. The relevant factors disfavor Classmates' position and Classmates has not convinced the Court to stay this matter pending the appeal. The Court DENIES the Motion to Stay and ORDERS Classmates to file its answer within 14 days of entry of this Order, as previously required by the Order in Docket Entry 31.

The clerk is ordered to provide copies of this order to all counsel.

Dated September 28, 2021.

Marsha J. Pechman
United States Senior District Judge