FOR PUBLICATION

UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

BARBARA KNAPKE,
    *Plaintiff-Appellee*,

v.

PEOPLECONNECT, INC.,
    *Defendant-Appellant.*

No. 21-35690

D.C. No.
2:21-cv-00262-MJP

OPINION

Appeal from the United States District Court
for the Western District of Washington
Marsha J. Pechman, District Judge, Presiding

Argued and Submitted May 18, 2022
Seattle, Washington

Filed June 29, 2022

Before: Kim McLane Wardlaw, Ronald M. Gould, and
Mark J. Bennett, Circuit Judges.

Opinion by Judge Bennett

## SUMMARY[*]

### Choice of Law / Arbitration

The panel vacated the district court's denial of a motion to compel arbitration in an action involving a right of publicity claim against PeopleConnect, LLC under Ohio law.

Plaintiff Barbara Knapke claimed that PeopleConnect used her name and likeness in its Classmates.com school yearbook database without her consent. Knapke retained an attorney, Christopher Reilly, who created a Classmates.com account and searched for Knapke on the site. In creating the account, Reilly agreed to the Terms of Service, which contained an arbitration provision. Applying Ohio law, the district court denied PeopleConnect's motion to compel arbitration, holding that there was no evidence that Knapke gave her counsel authority to bind her to the Terms of Service containing the arbitration provision.

The panel held that the district court erred in applying Ohio law because Washington law governed the threshold question of arbitrability. Here, because no conflict was shown to exist between the law of Washington (the forum state) and Ohio law, Washington law applied.

The panel held that on the record before the district court, questions of fact precluded ruling on the motion to compel arbitration. These questions of fact included: whether Knapke and Reilly had an agency relationship when Reilly

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

agreed to the Terms of Service; if they did have an agency relationship, whether and how Knapke limited Reilly's authority as her agent; and whether Knapke ratified Reilly's agreement to arbitrate even if Reilly initially lacked authority to bind her to the agreement. The panel rejected Knapke's contention that Fed. R. Civ. P. 11 obligations affected Reilly's use of the Classmates.com account. The panel held further that PeopleConnect had a right to conduct discovery on these and related arbitrability issues before the district court decides the motion to compel arbitration. The panel remanded for further proceedings.

## COUNSEL

Ian Heath Gershengorn (argued) and Illyana A. Green, Jenner & Block LLP, Washington, D.C.; Clifford W. Berlow, Debbie L. Berman, and Wade A. Thomson, Jenner & Block LLP, Chicago, Illinois; Brent Caslin, Jenner & Block LLP, Los Angeles, California; for Defendant-Appellant.

Roger Perlstadt (argued), Ryan D. Andrews, and Ben Thomassen, Edelson PC, Chicago, Illinois; Philip L. Fraietta, Bursor & Fisher P.A., New York, New York; for Plaintiff-Appellee.

**OPINION**

BENNETT, Circuit Judge:

Barbara Knapke claims that PeopleConnect, Inc. uses her name and likeness in its Classmates.com school yearbook database without her consent. Knapke, an Ohio resident, wanted to pursue an individual and class action right of publicity claim against PeopleConnect under Ohio law. Knapke retained an attorney, Christopher Reilly, but the record does not reflect when she retained him. Reilly created a Classmates.com account and searched for Knapke on the site. By creating the account, Reilly agreed to the site's Terms of Service, which contained an arbitration provision. Knapke eventually filed suit in the U.S. District Court for the Western District of Washington, represented by Reilly and his law firm. PeopleConnect sought to compel arbitration through a motion to dismiss[1] and alternatively asked for the right to conduct arbitration-related discovery. Applying Ohio law, the district court denied the motion, holding that there was no evidence that Knapke gave her counsel authority to bind her to the Terms of Service containing the arbitration provision. The district court also denied discovery.

The district court erred. First, Washington law, not Ohio law, governs the threshold question of arbitrability. And second, on the record before the district court, questions of fact precluded ruling on the motion to compel arbitration. These questions of fact include whether Knapke and Reilly had an agency relationship when Reilly agreed to the Terms of Service; if they did have an agency relationship, whether

---

[1] We follow the parties' lead in referring to the motion to dismiss as a motion to compel arbitration.

and how Knapke limited Reilly's authority as her agent; and whether Knapke ratified Reilly's agreement to arbitrate even if Reilly initially lacked authority to bind her to the agreement. PeopleConnect has a right to conduct discovery on these and related arbitrability issues before the district court decides the motion to compel arbitration. We have jurisdiction under 9 U.S.C. § 16(a)(1), and we vacate the district court's denial of the motion to compel arbitration and remand for further proceedings.

## I. BACKGROUND

PeopleConnect, Inc., a Delaware corporation with its principal place of business in Seattle, Washington, owns and operates Classmates.com, an online library of more than 450,000 yearbooks. Although any Classmates.com user may access some of that library, a user must register for either a free or paid account to access most of it. To register, a user must agree, by clicking "Submit", to hyperlinked Terms of Service and a privacy policy. The Terms of Service contain an arbitration provision. The arbitration provision covers, with almost no exceptions, "any and all disputes that have arisen or may arise" between the user and an array of PeopleConnect entities. The Terms of Service also allow a user to "opt-out and not be bound by [the] arbitration provision by sending written notice of [the] decision to opt-out" within thirty days.

Knapke lives in Sidney, Ohio. Her class action complaint is based on Classmates.com's use of her and other Ohioans' names and likenesses to advertise its products without their consent in violation of Ohio's right to publicity statute. The complaint included screenshots from parts of Classmates.com accessible only to a user who had first agreed to the Terms of Service. Some screenshots show that a user named "Christopher" was logged into a

Classmates.com account when the screens captured in the screenshots were displayed. And PeopleConnect confirmed that Christopher Reilly, Knapke's attorney, created a Classmates.com account on January 7, 2021, and purchased a three-month subscription on January 29, 2021. Reilly could not have done either without first agreeing to the Classmates.com Terms of Service.

PeopleConnect moved to compel arbitration, arguing that the arbitration clause covered this dispute. PeopleConnect argued that Knapke was bound by the arbitration clause because her counsel, Reilly, had agreed to the Terms of Service (which include the arbitration provision) while acting as her agent. PeopleConnect's Associate Director of Compliance and Intellectual Property declared that users must agree to the Terms of Service before accessing the results of a Classmates.com search or registering for either a free or paid account. PeopleConnect also asserted that Reilly was Knapke's attorney and agent, but it did not offer evidence that Knapke had either retained or otherwise given authority to Reilly when he agreed to the Terms of Service. PeopleConnect stated, as well, that if the district court denied its motion, it wished to engage in limited discovery about Knapke's "knowledge of and acquiescence to counsel's use of Classmates.com on her behalf" and "the identity of the person who took the screenshots that appear in the complaint."

Knapke argued that she had no relationship with PeopleConnect and that Reilly's agreement to the Classmates.com Terms of Service did not bind her. Knapke maintained that she had never been a Classmates.com customer, had never seen the arbitration agreement, and that the "hidden" nature of the clause within the "several thousand-word" Terms of Service accessible via hyperlink

rendered the clause "irrelevant" regardless. Knapke also argued that her counsel created the account to satisfy his obligations under Federal Rule of Civil Procedure 11(b); in her view, "the failure . . . to check if a plaintiff's identity was in fact publicized by the website would likely draw . . . sanctions." And Knapke claimed that PeopleConnect's attempt to bind her to the arbitration clause was "extraordinary overreach" because it would allow websites to force every plaintiff into arbitration. Knapke also argued that her counsel could not have bound her to the Terms of Service because the Terms forbid the creation of accounts on behalf of another person and that estoppel does not compel her, as a nonsignatory, to arbitrate her claims because she did not knowingly accept any benefit from PeopleConnect. And Knapke maintained that her counsel did not discuss creating a Classmates.com account with her—and that the discussions they did have were privileged.

The district court denied PeopleConnect's motion to compel arbitration.[2] *See Knapke v. PeopleConnect Inc.*, 553 F. Supp. 3d 865 (W.D. Wash. 2021). The district court applied Ohio law "because Knapke resides in Ohio and Ohio law should apply to interpreting any attorney-client relationship that she entered into from her domicile." *Id.* at 872. It rejected PeopleConnect's argument that Reilly's agreement to the Terms of Service bound Knapke. *Id.* at 872–74. The district court also found there was "no evidence that Knapke gave her counsel any authority to bind

---

[2] PeopleConnect also argued that Knapke's claim was: (i) barred by Section 230, a provision of the Communications Decency Act; (ii) preempted by Section 301 of the Copyright Act; (iii) insufficient to state a claim under the Ohio right of publicity statute; (iv) barred by the First Amendment; and (v) barred by the Dormant Commerce Clause. The district court rejected each of these arguments, and these issues are not before us on appeal.

her to Classmates' terms of service." *Id.* at 873. It found no evidence that Reilly acted at Knapke's direction or that Classmates.com understood counsel's actions to have been undertaken on Knapke's behalf. *Id.* And it found both that Knapke did not discuss creating a Classmates.com account with Reilly and that the Terms of Service forbade the creation of accounts on behalf of others. *Id.*

The district court also found that Reilly created and used the Classmates.com account to satisfy his Rule 11 obligations. *Id.* And the district court rejected PeopleConnect's request for discovery because, in its view, Knapke had disclosed in her opposition both the extent of her knowledge of and acquiescence to Reilly's use of the account and the identity of the person who took the screenshots used in the complaint (Reilly). *Id.* at 874. PeopleConnect timely appealed.

## II. STANDARD OF REVIEW

We review an order denying a motion to compel arbitration de novo, questions of arbitrability "with a healthy regard for the federal policy favoring arbitration," and any underlying factual findings for clear error. *O'Connor v. Uber Techs., Inc.*, 904 F.3d 1087, 1093 (9th Cir. 2018) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).

## III. DISCUSSION

The Federal Arbitration Act ("FAA") "governs the enforceability of arbitration agreements in contracts involving interstate commerce." *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1126 (9th Cir. 2013). Under the FAA, private agreements to arbitrate are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in

equity for the revocation of any contract." 9 U.S.C. § 2. "The question whether the parties have submitted a particular dispute to arbitration, *i.e.,* the *question of arbitrability*, is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (cleaned up). "Generally, a court must determine two issues before deciding whether to compel arbitration: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Zoller v. GCA Advisors, LLC*, 993 F.3d 1198, 1201 (9th Cir. 2021). Knapke does not dispute that the arbitration clause covers her claim. The question is thus whether Knapke agreed to arbitrate with PeopleConnect.

The FAA "supplies not simply a procedural framework applicable in federal courts; it also calls for the application, in state as well as federal courts, of federal substantive law regarding arbitration." *Preston v. Ferrer*, 552 U.S. 346, 349 (2008). "As federal substantive law, the FAA preempts contrary state law." *Mortensen v. Bresnan Commc'ns, LLC*, 722 F.3d 1151, 1158 (9th Cir. 2013). And under the FAA's procedural framework, "[i]f the making of the arbitration agreement . . . be in issue, the court shall proceed summarily to the trial thereof." 9 U.S.C. § 4. "In applying this language, district courts rely on the summary judgment standard of Rule 56 of the Federal Rules of Civil Procedure." *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670 (9th Cir. 2021). As a result, "a court is not authorized to dispose of a motion to compel arbitration until after [material] factual disputes have been resolved." *Id.* at 671.

At summary judgment, if a court "concludes that there are genuine disputes of material fact as to whether the parties formed an arbitration agreement, the court must proceed

without delay to a trial on arbitrability and hold any motion to compel arbitration in abeyance until the factual issues have been resolved." *Id.* at 672. "The district court may decide the case in a bench trial if the party opposing arbitration does not demand a jury trial. But if a jury trial is demanded, 'the court shall make an order referring the issue or issues to a jury in the manner provided by the Federal Rules of Civil Procedure, or may specially call a jury for that purpose.'" *Id.* at 670 (quoting 9 U.S.C. § 4).

Because the FAA does not "alter background principles of state contract law regarding the scope of agreements (including the question of who is bound by them)," state law governs this inquiry. *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630 (2009). Knapke's status as a nonsignatory to the arbitration agreement does not alter the applicability of state law. *See GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 140 S. Ct. 1637, 1643 (2020) ("Chapter 1 of the Federal Arbitration Act (FAA) permits courts to apply state-law doctrines related to the enforcement of arbitration agreements."); *see also O'Hanlon v. Uber Techs., Inc.*, 990 F.3d 757, 766 (3d Cir. 2021) ("Those background principles include 'doctrines [like estoppel] that authorize the enforcement of a contract [against] a nonsignatory.'" (alterations in original) (quoting *GE Energy*, 140 S. Ct. at 1643)); 21 Richard A. Lord, Williston on Contracts § 57:19 (4th ed. May 2022 Update) ("Thus, a nonsignatory may acquire rights under or be bound by an arbitration agreement if so dictated by the ordinary principles of contract and agency." (footnotes omitted)).

PeopleConnect, "as the party seeking to compel arbitration, must prove the existence of a valid agreement by a preponderance of the evidence." *Wilson v. Huuuge, Inc.*, 944 F.3d 1212, 1219 (9th Cir. 2019). It has not proven the

existence of such an arbitration agreement binding Knapke at this initial stage.

## A. Choice of Law

The district court erred in its choice-of-law analysis by applying Ohio law, Knapke argued that Ohio law applied, and PeopleConnect argued that Washington law applied, but neither claimed that the choice of law would affect the outcome. However, both parties now agree that Washington law applies. District courts sitting in diversity apply the choice-of-law rules of the forum state. *See Lazar v. Kroncke*, 862 F.3d 1186, 1194 (9th Cir. 2017). And Washington, the forum state, employs the "most significant relationship test" to determine choice-of-law questions. *FutureSelect Portfolio Mgmt., Inc. v. Tremont Grp. Holdings, Inc.*, 331 P.3d 29, 36 (Wash. 2014) (citing Restatement (Second) of Conflict of Laws §§ 145, 148 (1971)). But before courts apply that test, "[a]n actual conflict between the law of Washington and the law of another state must be shown to exist." *Burnside v. Simpson Paper Co.*, 864 P.2d 937, 942 (Wash. 1994). "Absent such a showing, the forum may apply its own law." *Id.* Here, because no conflict has been shown to exist between Washington and Ohio law, Washington law applies.

## B. Arbitration Agreement

The record does not establish whether Reilly was Knapke's attorney when he agreed to the Classmates.com Terms of Service. But even if the record showed that Reilly agreed to the Terms of Service after Knapke retained him, that would not be enough, on its own, to show that the arbitration clause binds Knapke.

### 1. Agency Relationship

It is unclear whether Reilly and Knapke had an attorney-client relationship, and thus an agent-principal relationship, when Reilly agreed to the Terms of Service. *See West v. Thurston County*, 275 P.3d 1200, 1212 (Wash. Ct. App. 2012) ("We recognize that the attorney-client relationship is generally a type of principal-agent relationship.").[3] Under Washington law, "[t]he burden of establishing an agency relationship is on the party asserting it exists"—here, PeopleConnect. *Afoa v. Port of Seattle*, 421 P.3d 903, 911 (Wash. 2018).

The record does not show when Knapke and Reilly formed their agency relationship. Reilly did become Knapke's attorney at some point. But it is unclear if that happened before Reilly initially registered for his Classmates.com account, or if not, before he bought his three-month subscription. The screenshots discussed above are evidence of *Reilly's* assent to the arbitration agreement. *See Tompkins v. 23andMe, Inc.*, No. 5:13-CV-05682-LHK, 2014 WL 2903752, at *7 (N.D. Cal. June 25, 2014) (access to portions of website requiring assent to Terms of Service is sufficient evidence of assent to arbitration clause contained in it), *aff'd*, 840 F.3d 1016 (9th Cir. 2016). But the record does not establish when Reilly became Knapke's agent, whether as her attorney or otherwise. As discussed below, this issue might be material to determining whether

---

[3] Knapke need not have formally retained Reilly's law firm by that time for an agency relationship to have formed. "Consent [to an agency relationship] may be implied," and there need only be "facts or circumstances that establish that one person is acting at the instance of and in some material degree under the direction and control of the other." *Wash. Imaging Servs., LLC v. Wash. State Dep't of Revenue*, 252 P.3d 885, 892 (Wash. 2011) (internal quotation marks omitted).

Knapke is bound by Reilly's agreement to the Terms of Service. We thus remand for discovery on this issue.

Knapke focuses on PeopleConnect's decision not to take discovery on this issue *before* moving to compel arbitration. Instead, PeopleConnect noted in its motion that if the district court did not grant its motion, it requested leave to engage in limited discovery about the agency relationship. So, according to Knapke, PeopleConnect "wanted it both ways—if it won the motion to compel, great; if it didn't win, only then did it want discovery. Although [PeopleConnect] had the burden to present evidence [of an agreement to arbitrate], it rolled the dice and chose not to pursue additional discovery at the outset." Appellee's Br. 16 (quoting *Wilson*, 944 F.3d at 1220). But the defendant in *Wilson* "waived its discovery request as it was insufficiently raised in a two-line footnote in a reply brief." 944 F.3d at 1220. Here, PeopleConnect conditionally, and sufficiently, requested discovery in its motion to compel. Nothing required PeopleConnect to seek discovery first, and the district court never found (nor could it have) that PeopleConnect waived taking discovery. And since *Wilson*, we have confirmed that the FAA's procedure mirrors the three phases of federal civil lawsuits: a motion to compel arbitration akin to a motion to dismiss; followed by optional discovery before summary judgment, if the motion is denied; followed by a mini-trial, if necessary. *See Hansen*, 1 F.4th at 670.

   **2. Binding Effect**

Because of a factual dispute about the scope of Reilly's authority, the record does not allow a determination of whether Knapke is bound to the arbitration through Reilly's assent. Under Washington law, "[a]rbitration agreements may encompass nonsignatories under contract and agency

principles." *Romney v. Franciscan Med. Grp.*, 349 P.3d 32, 42 (Wash. Ct. App. 2015). Washington also recognizes various theories under which a nonsignatory may be bound by a contract, including agency. *Satomi Owners Ass'n v. Satomi, LLC*, 225 P.3d 213, 230 n.22 (Wash. 2009). "An agency relationship may exist, either expressly or by implication, when one party acts at the instance of and, in some material degree, under the direction and control of another." *Hewson Constr., Inc. v. Reintree Corp.*, 685 P.2d 1062, 1064 (Wash. 1984). And an agent may bind a principal through either actual authority (express or implied) or apparent authority. *King v. Riveland*, 886 P.2d 160, 165 (Wash. 1994).

A principal may also be bound by contracts her agent makes without authority if the principal later ratifies the agent's agreement. *Bill McCurley Chevrolet, Inc. v. Rutz*, 808 P.2d 1167, 1170 (Wash. Ct. App. 1991). "A principal ratifies an agent's agreement if the principal (1) receives, accepts, and retains benefits from the contract; (2) remains silent or fails to repudiate the contract; or (3) otherwise exhibits conduct demonstrating adoption and recognition of the contract." *Hoglund v. Meeks*, 170 P.3d 37, 46 n.7 (Wash. Ct. App. 2007).

Under both implied actual authority and ratification, it is unclear if Reilly's agreement to the arbitration provision binds Knapke, even if Reilly were Knapke's attorney when he agreed. Knapke's status as an undisclosed principal when Reilly was her agent does not alter the application of Washington agency law here. Nor does Reilly's obligation under Federal Rule of Civil Procedure 11 to adequately investigate Knapke's claim.

### a. Implied Actual Authority

The parties dispute whether Reilly had implied actual authority to agree to the Classmates.com Terms of Service on Knapke's behalf. Under Washington law, "[i]mplied authority is actual authority, circumstantially proved, which the principal is deemed to have actually intended the agent to possess." *King*, 886 P.2d at 165. And "actual authority to perform certain services on a principal's behalf results in implied authority to perform the usual and necessary acts associated with the authorized services." *Hoglund*, 170 P.3d at 44. Such usual and necessary acts can include agreeing to contracts. *See, e.g.*, *Chi. Title Ins. Co. v. Wash. State Off. of Ins. Comm'r*, 309 P.3d 372, 382 (Wash. 2013). Attorneys licensed in Washington also possess the same implied authority to act on behalf of their clients. *See* Wash. R. of Prof'l Conduct 1.2(a) ("A lawyer may take such action on behalf of the client as is impliedly authorized to carry out the representation.").

At some point, Knapke retained Reilly and his law firm to file suit against PeopleConnect based on Classmates.com's alleged unauthorized use of her image. But the scope of both their agreement and Reilly's corresponding authority are unclear on this record. Knapke now argues that she retained Reilly's law firm not "to enter into the PeopleConnect Terms of Service," but only "to investigate and file a lawsuit." Appellee's Br. 21. But Knapke filed no declaration, and Reilly's declaration does not discuss this issue. Discovery could reveal, among other things, both the contours of Knapke's agreement with Reilly's law firm and the limits, if any, on Reilly's authority to act on Knapke's behalf.

Knapke's memorandum in opposition to the motion to compel stated that counsel had no discussion with Knapke

about creating an account on Classmates.com. But this statement is unsupported by any declaration. Knapke's memorandum also states that counsel's discussions with Knapke are protected by privilege and that counsel's representations regarding things they did not discuss do not operate as a waiver of the privilege on any subject. The district court rejected PeopleConnect's request for "discovery to learn about Knapke's knowledge and acquiescence to counsel's use of the account" because "[t]hat information ha[d] already been provided in the Opposition, rendering the requested discovery a nullity." *Knapke*, 553 F. Supp. 3d at 874. But that information, if it was provided, was not provided in a declaration. PeopleConnect is entitled to discovery in these areas and need not accept at face value the statements Knapke's counsel made in a memorandum of law.

On remand, the district court should determine the contours of the attorney-client privilege and any potential waiver of that privilege. The district court should also determine the consequences, if any, of Knapke simultaneously denying an agency relationship regarding the arbitration agreement and asserting a privilege for communications that would bear directly on that issue. *See* 5A Karl B. Tegland, Wash. Prac., Evidence Law and Practice § 501.26 (6th ed. Aug. 2021 Update) ("A party waives the privilege by placing confidential communications at issue, i.e., by raising an issue as to whether confidential communications did or did not occur. Waivers have occasionally been found when the intent of a contract or other document was placed in issue." (footnote omitted)); 1 Paul R. Rice et al., Attorney-Client Privilege: State Law Wash. § 9:30 (July 2020 Update) ("Consistent with federal law, Washington courts will not allow the attorney-client privilege to be used as both a sword and a

shield" and "will not permit selective disclosure of parts of privileged communications that are favorable to the client's position and then raise the privilege to prevent disclosure of the remaining portions that give context and meaning to what the client has disclosed.").

### b. Ratification

On this record, it is also unclear if Knapke is bound because she ratified Reilly's agreement to the Terms of Service, even if she would not otherwise be bound. In its motion to compel arbitration, PeopleConnect noted in conditionally requesting discovery that it would ask about Knapke's "knowledge of and acquiescence to [Reilly's] use of Classmates.com on her behalf." Acquiescence is one method of ratification. *Barnes v. Treece*, 549 P.2d 1152, 1157 (Wash. Ct. App. 1976). "Under agency law, ratification is the affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account, whereby the act, as to some or all persons, is given effect as if originally authorized by him." *Riss v. Angel*, 934 P.2d 669, 683 (Wash. 1997) (cleaned up). Principals can ratify an agent's agreement in three ways: (1) by receiving, accepting, and retaining benefits from the contract; (2) by remaining silent, acquiescing, or failing to repudiate the contract; or (3) by otherwise exhibiting conduct demonstrating adoption and recognition of the contract. *Hoglund*, 170 P.3d at 46 n.7; *Barnes*, 549 P.2d at 1157. Ratification by silence or acquiescence requires knowledge and either "acceptance of the benefits from the contract or prejudicial reliance by the other party." *Lockwood v. Wolf Corp.*, 629 F.2d 603, 609 (9th Cir. 1980) (citing *Barnes*, 549 P.2d at 1157).

The record does not establish whether Knapke knew that Reilly had agreed to the Terms of Service on her behalf.

There is no evidence that Knapke knew, when she filed her complaint, that Reilly had even agreed to the Terms of Service. And were that still the state of the record following discovery, it would follow that there could be no evidence that Knapke knew that Reilly had agreed to the Terms of Service *on her behalf*. But the ratification inquiry looks not only to the principal's knowledge, but also to the principal's later actions.

PeopleConnect argues that Knapke learned of Reilly's agreement at the latest when PeopleConnect argued in its motion to compel arbitration that Reilly agreed to the Terms of Service. And as PeopleConnect notes, in her opposition, Knapke did not renounce Reilly's agreement and employed materials that Reilly had obtained for her benefit through his agreeing to the Terms of Service. "Ratification can be inferred from the principal's silence if the circumstances are such that, according to the ordinary experience and habits of men, one would naturally be expected to speak if he did not consent." *Smith v. Hansen, Hansen & Johnson, Inc.*, 818 P.2d 1127, 1135 (Wash. Ct. App. 1991) (cleaned up). But the record does not establish the facts necessary to decide this issue, including what Knapke knew and when she knew it. Knapke's supposed silence even after PeopleConnect moved to compel arbitration does not necessitate a finding of ratification on the current record. Thus, PeopleConnect is also entitled to discovery on ratification.

### c. Undisclosed Principal Status

Knapke's status as a possible undisclosed principal does not alone determine whether she is bound by Reilly's agreement. Under Washington law, "where an agent on behalf of his principal enters into a simple contract as though made for himself, and the existence of the principal is not

disclosed, the contract inures to the benefit of the principal who may appear and hold the other party to the contract made by the agent." *Dana v. Boren*, 135 P.3d 963, 965 (Wash. Ct. App. 2006) (quoting *Columbia Sec. Co. v. Aetna Accident & Liab. Co.*, 183 P. 137, 141 (Wash. 1919)). If the principal "appear[s] and claim[s] the benefit of the contract," then the contract "becomes [her] own to the same extent as if [her] name had originally appeared as a contracting party." *Id.* (quoting *Columbia*, 183 P. at 141).

Knapke argues that Reilly did not intend to agree to the Terms of Service on her behalf, and so as an undisclosed principal, she is not bound. But "[a]n undisclosed principal only becomes a party to a contract when an agent acts on the principal's behalf in making the contract. Thus, an undisclosed principal does not become a party to a contract when the agent does not intend to act for the principal." Restatement (Third) of Agency § 6.03 cmt. c (2006). *Cf. Kim v. Moffett*, 234 P.3d 279, 284 n.10 & 287 (Wash. Ct. App. 2010) (citing § 6.03 cmts. d & e when assessing Washington law). The question is thus whether Reilly acted on Knapke's behalf in agreeing to the Classmates.com Terms of Service, not, as Knapke argues, whether Reilly intended to bind her. Further factual development is necessary to answer this question.

### d. Federal Rule of Civil Procedure 11

Federal Rule of Civil Procedure 11 requires attorneys to make a reasonable prefiling inquiry into the facts and law supporting intended claims. *See* Fed. R. Civ. P. 11(b). Knapke argues that "one, if not the primary, use of the Classmates.com account by Mr. Reilly was to satisfy his obligations under Civil Rule 11." First, nothing in Reilly's declaration supports that proposition or even discusses Rule 11. And second, while Reilly's motivations could

perhaps inform whether he agreed to the Terms of Service on Knapke's behalf, that issue, while relevant, is not necessarily determinative.  Moreover, Reilly's obligation under Rule 11 to adequately investigate Knapke's claim does not alter the application of Washington agency law.

Rule 11 cannot explain Reilly's choice not to opt out of arbitration, either.  Under the Terms of Service, users may opt out of arbitration through written notice within thirty days of first using Classmates.com.  Reilly could have satisfied his Rule 11 obligation by creating his Classmates.com account and then opting out of arbitration to retain the right to judicial recourse.  He simply did not do so.

### IV. CONCLUSION

**VACATED** and **REMANDED** on an open record.[4]

The parties shall bear their own costs.

---

[4] The parties make various waiver claims.  For example, PeopleConnect claims that Knapke waived any argument about the timing of the formation of her agency relationship with Reilly.  And Knapke claims that PeopleConnect waived its ratification argument.  On remand, the district court should consider all relevant arguments, irrespective of any initial waiver.